Joyce METZGER and Donald A. Metzger, parents and next friends of Glen Metzger, Petitioners,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

No. 89–74V.

United States Claims Court.

Nov. 19, 1990.

Jack Gage, for petitioners; Robert T. Moxley, Cheyenne, Wyo., of counsel.

Frank F. Krider, with whom was Asst. Atty. Gen. Stuart M. Gerson, Dept. of Justice, Washington, D.C., for respondent; Barbara Hudson, Dept. of Health and Human Services, Rockville, Md., of counsel.

## OPINION

HORN, Judge.

This is an action for compensation for a vaccine related injury to petitioners' child, Glen Metzger, brought on his behalf by his parents, Joyce Metzger and Donald A. Metzger. They seek compensation under The National Vaccine Injury Compensation Program, as established by The National Childhood Vaccine Injury Act of 1986, Pub.L. No. 99–660, Tit. III, § 311(a), 100 Stat. 3755, as amended by the Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, Tit. VI, Subtit. D, § 660, 103 Stat. 2285 (hereinafter, Vaccine Act).[1] Provisions of the program, as amended, are set out in 42 U.S.C.A. §§ 300aa–10—300aa–34 (West Supp.1990).

Special Master David A. Gerard held a hearing on October 26, 1989 to determine whether the petitioners were entitled to compensation under the criteria set out in the Vaccine Act. On June 15, 1990, Special Master Gerard entered his decision, awarding petitioners compensation in the amount of $2,057,139.00.

This case is now before this United States Claims Court judge, upon motion of the respondent, the Secretary of the Department of Health and Human Services, for review of the special master's decision. The respondent objects to the special master's award of compensation to petitioners relating to three vocational evaluations at

$750.00 each, and six months of vocational training at $650.00 per month, to be provided to the child, Glen, at three separate intervals of his adult life, for a total of eighteen months. The respondent also objects to the special master's decision to award compensation to the petitioners in four, equal, annual installments, rather than in the form of an annuity, which the respondent appears to consider preferable.

Jurisdiction for the case is vested in the United States Claims Court and in the United States Claims Court Special Masters under the Vaccine Act, 42 U.S.C.A. § 300aa–12 (West Supp.1990), and pursuant to United States Claims Court General Order No. 26, published on January 18, 1990.

After consideration of respondent's Motion for Review of Special Master's Decision and the accompanying Memorandum of Objections, and petitioners' Memorandum In Opposition to Respondent's Motion for Review, as well as the record filed in the case, the court finds that Special Master Gerard's decision to award petitioners compensation for their child's future vocational evaluation and training is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See* section 300aa–12(e)(2) of the Vaccine Act. The court declines to substitute its own judgment for that of the factfinder, the special master, especially when, as in this case, the respondent chose not to participate in the evidentiary hearing, leaving the petitioners' evidence unrefuted. Moreover, this court finds no basis to reject the special master's award of compensation in four, equal, annual installments, as opposed to in the form of an annuity, in light of the fact that the Vaccine Act specifically authorizes the special master, in his discretion, to award compensation in exactly such a manner. *See* section 300aa–15(f)(4)(B). The statute allows the special master to order that the money be invested in a particular manner if the master determines such an investment to be in the best interest of a petitioner. *Id.* The court has no reason to believe that the special master

---

1. The Vaccine Act was amended again recently by the Vaccine and Immunization Amendments of 1990, Pub.L. No. 101–502 (1990), although none of those amendments are pertinent to the case currently before the court.

did not carefully review the record and consider the relevant factors before determining the form of the award of compensation. The respondent chose not to be involved at the evidentiary hearing before the special master and did not raise the issue of the form of the award until after the special master entered his final decision. Moreover, the respondent raised the option of an annuity for the first time when it filed its Motion for Review of Special Master's Decision with this court. Even then, the respondent failed to provide any support for its position. The judgment of Special Master Gerard, awarding petitioners $2,057,139.00 is, hereby, AFFIRMED.

## BACKGROUND

On July 3, 1989, the petitioners, Joyce Metzger and Donald A. Metzger, filed their petition for compensation under the Vaccine Act. They claimed that as a result of a DPT[2] vaccination, their son, Glen, suffered an encephalopathy and a residual seizure disorder, causing him to suffer severe physical handicaps and profound developmental delay.[3] Unfortunately, the respondent, the Secretary of the Department of Health and Human Services, did not file a timely notice of appearance, did not file an answer to petitioners' complaint, and did not file any responsive pleadings to those filed by the petitioners, until it filed for review by this court. For reasons of its own, which show a disrespect for the Vaccine Act, and the special masters, it chose to appear for the first time for the purposes of objecting to the special master's decision.

On August 21, 1989, Special Master Gerard issued an order directing the respondent to show cause why a default judgment should not be entered against it, barring it from further participation in the case. Respondent again made no response. On October 26, 1989, after notifying both parties on October 5, 1989, the special master proceeded to hold an evidentiary hearing in respondent's absence, noting his regret at respondent's failure to attend: "... it is regrettable that the respondent has chosen to abandon this case and will not be participating in this hearing today. I strongly feel that the interests of justice are best served in an adversarial hearing where both sides present their evidence and arguments to an impartial fact finder." The petitioners then proceeded to present their case to the special master.

On January 26, 1990, Barbara Hudson, an attorney with the United States Department of Health and Human Services, filed the first notice of appearance in the case on behalf of the respondent. On the same date, respondent also filed a "Notice of Filing", in which the government notified the Special Masters and the Claims Court that:

> Respondent hereby notifies the Court that respondent is unable to participate further in the proceedings before the Special Master in this case. Specifically, respondent is unable to participate in status conferences, to render medical opinions as to petitioner's eligibility for compensation, or to provide additional information to assist the Court in determining the amount of compensation, should the Court find that petitioner is eligible for compensation under the terms of the Act. Respondent respectfully reserves the right to take actions authorized by 42 U.S.C. § 300aa–12(e) and (f) as warranted.

In his decision, filed June 15, 1990, Special Master Gerard found that the criteria entitling the petitioners to compensation set out by the Vaccine Act had been met by the petitioners, and awarded reasonable compensation for anticipated future expenses, in the amount of $2,057,139.00, to be given to petitioners in the form of four, equal, annual installments. On July 13, 1990, respondent filed its Mo-

---

2. Diphtheria and tetanus toxoids with pertussis vaccine.

3. For a detailed account of the facts and circumstances leading up to the filing of the petitioners' claim, and an outline of the specific allega-

tions put forward by the petitioners in their claim, see the special master's decision, *Metzger v. Secretary of the Dep't of Health & Human Servs.*, No. 89–74V (filed June 15, 1990).

tion for Review of Special Master's Decision, which brought this case before this judge. On July 20, 1990, Frank F. Krider filed his notice of appearance on behalf of the respondent. Petitioners filed their Memorandum in Opposition to Respondent's Motion for Review on August 10, 1990.[4]

## DISCUSSION

In this case, this judge has only been requested to review two rather narrow issues arising from the special master's decision. The first issue raised by respondent in its Motion for Review and Memorandum of Objections is whether the award of compensation for Glen's vocational evaluation and training is inappropriate in light of the record produced by the petitioner, which indicates that Glen will never be able to perform any gainful employment. The second issue involves the special master's decision to award compensation in the form of four, equal, annual installments.

## I

Respondent first asks this court to review the special master's decision to award compensation for Glen's vocational evaluation and training, to be provided to him at ages 22, 30 and 40, at a total cost of $13,950.00. Respondent contends that this award is inappropriate in light of the special master's finding that Glen will never be able to hold gainful employment. This finding was based on the testimony, given during the October 26, 1989 hearing, of one of the petitioners' witnesses, Ms. Helen Woodard, a Board certified vocational expert and rehabilitation specialist.

Before the 1989 amendments to the Vaccine Act were enacted, the special master to whom a Vaccine Act compensation case was assigned held an evidentiary hearing, and prepared proposed findings of fact or conclusions of law. The special master's findings were then presented for review by a judge of the United States Claims Court before the judgment was entered as a final order of the court. The 1989 amendments changed section 300aa–12(c), and redefined the role of the office of special masters within the Claims Court. Section 300aa–12(d), as amended, provides rules and standards for the special masters to follow when conducting proceedings on a vaccine injury petition. Under amended section 300aa–12(d), the special master is given the authority to make a decision in each case as to whether compensation is to be provided under the program and the amount of such compensation. The decision of the special master is subject to review by the Claims Court only upon motion of one of the parties. The 1989 amendment of section 300aa–12(e)(2) defines the role of the Claims Court judge as to:

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's direction.

In its report on the 1989 amendments, the Conference Committee of the House and Senate specifically stated that review of the special masters' decisions by the Claims Court was to take place only under "limited circumstances": "The conferees have provided for a limited standard for appeal from the master's decision and do not intend that this procedure be used fre-

4. In reviewing a special master's decision in cases arising under the Vaccine Act, the Claims Court is not required to hold oral arguments. In the present case, the court felt that oral arguments were not necessary due to the almost frivolous nature of the respondent's Motion for Review, its clear misreading of the two controlling sections of the statute, and the rectitude of the special master's decision. Furthermore, giv-

en the respondent's disrespectful refusal to participate in the proceedings before the special master, the court felt no obligation to allow the respondent an opportunity to elaborate on the evidence in the context of a judicial review proceeding, or to allow the respondent to further explain its inarticulate filings before this court.

quently but rather in those cases in which a truly arbitrary decision has been made." 135 Cong.Rec. H9477 (daily ed. Nov. 21, 1989).

The Supreme Court has held that when determining whether an executive agency decision was arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law,

> ... the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment [citations omitted]. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

The Court of Appeals for the Federal Circuit has stated that "an abuse of discretion occurs when (1) the court's decision is clearly unreasonable, arbitrary or fanciful (citation omitted); (2) the decision is based on an erroneous conclusion of law (citation omitted); (3) the court's findings are clearly erroneous (citation omitted); or (4) the record contains no evidence on which the district rationally could have based its decision (citation omitted)." *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1022 (Fed.Cir.1986). The court in *Heat & Control* held that abuses of discretion "must be unusual and exceptional; we will not merely substitute our judgment for that of the trial judge." *Id.* (citing *Premium Serv. Corp. v. Sperry & Hutchinson Co.,* 511 F.2d 225, 229 (9th Cir.1975)).

■ In vaccine cases, the legislature has prescribed a judicial scenario whereby the Claims Court judge, with whom a motion for review is lodged, must act in the role of an appellate, reviewing authority and can only overturn a special master's decision if a party can demonstrate he or she acted arbitrarily, capriciously, abused his or her discretion or acted not in accordance with the law, which are the standards enumerat-

ed in the statute. *See* section 300aa–12(e)(2).

Therefore, whereas, previously, the Claims Court's scope of review was broad, after the 1989 amendments, "if the evidence in the record has been considered by the special master, and such evidence provides a reasonable basis for his or her finding, the special master's findings of fact may not be set aside." *Munn v. Secretary of Dep't of Health & Human Servs.,* 21 Cl.Ct. 345, 348 (1990).

■ In determining whether Special Master's Gerard's decision to award compensation for Glen's vocational evaluation and training was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, and therefore, subject to rejection or modification by this court, two things must be determined: first, whether compensation for vocational evaluation and training is allowed by the statute, and second, whether the award of compensation, at the level provided, for vocational evaluation and training was reasonable in light of the evidence in the record, including the evidence offered by the parties at the evidentiary hearing held on October 26, 1989.

■ When interpreting the meaning of a statute, it is well settled law that "the starting point in every case involving construction of a statute is the language itself." *Watt v. Alaska,* 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981) (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975), *reh'g denied* 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 114 (1975)); *Madison Galleries, Ltd. v. United States,* 870 F.2d 627, 629 (Fed.Cir.1989). It must be assumed that the ordinary or plain meaning of that language accurately expresses the legislative purpose. *Id.* at 632. *Morris v. Secretary of Dep't of Health & Human Servs.,* 20 Cl.Ct. 14 (1990) (citing *Park'N Fly v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)). Section 300aa–15(a)(1)(A)(II) of the Vaccine Act allows compensation to be awarded for expenses which "have been or will be for

rehabilitation, developmental evaluation, special education, vocational training and placement...." The language of the statute itself demonstrates that the special master's decision to award compensation for vocational evaluation and training was in accordance with the Act.[5]

▮▮▮▮ Respondent also contends that the award of compensation for vocational evaluation and training is inappropriate in light of the special master's finding that Glen will never be able to perform gainful employment. Special Master Gerard's finding and decision in this matter must be considered in relation to all the evidence put forth by petitioners in the petition and at the evidentiary hearing, and in particular, the testimony of Ms. Helen M. Woodard, witness for the petitioners. In reviewing the special master's decision, deference should be given to the special master's opportunity to evaluate the credibility of witnesses presented at the evidentiary hearing. *Hines v. Secretary of the Dep't of Health & Human Servs.*, 21 Cl.Ct. 634, 642 (1990) (citing *Exxon Corp. v. United States*, 19 Cl.Ct. 755, 761 (1990)). When questioned by counsel for petitioners about the appropriateness of the various programs she had recommended for Glen, Ms. Woodard testified that "even though there is no possibility that he's [Glen's] going to be competitively gainfully employed, we would expect him to work in a sheltered activity type of program or a supported employment type of program or shelter work type of program where he went out to do a structured activity five days a week. That's what the rest of us do and that's what we would hope for him." When counsel for petitioners finished his direct examination of Ms. Woodard, the special master himself questioned Ms. Woodard about the training and services she had recommended for Glen. Ms. Woodard again explained that as a result of the vocational training and evaluation, Glen hopefully would be placed in a shel-

tered work or supported employment program.

Had the respondent been present at the evidentiary hearing, either to further question Ms. Woodard about the necessity of the vocational training, or to present its own witnesses to contradict Ms. Woodard's testimony, the respondent might have been able to persuade the special master that a different award of compensation for vocational evaluation and training is appropriate, or that no award in this category should be made to the petitioners. The respondent, however, made its own decision not to attend the hearing, not to try to cross examine Ms. Woodard, and not to present evidence to question or refute the special master's finding of the number of times that Glen should receive evaluation and training or the projected cost of that service. Nor does the respondent offer any substantive evidence on these issues in its Motion to Review and accompanying Memorandum of Objections.

▮▮▮▮ It is not the function of the special master, in matters involving claims under the Vaccine Act, to perform the cross-examination of a witness or bring out additional evidence on behalf of a respondent. Under the Vaccine Act, this court must determine whether, in light of the evidence presented to the special master included in the record before it, the special master's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. It appears from the record in this case that there was enough evidence to show the necessity for vocational training and evaluation to be provided to Glen in the future, that the special master could reasonably conclude that an award of compensation for vocational evaluation and training is appropriate.

II

▮▮▮▮ The second issue raised by respondent in its Motion for Review and Memo-

---

**5.** Although respondent argues that the special master's decision to award compensation for vocational evaluation and training constitutes an unwarranted expansion of the Vaccine Act's limited waiver of sovereign immunity, this argu-

ment is without merit. As already stated, the Vaccine Act specifically provides for this type of compensation when the special master deems it to be reasonable. See section 300aa–15(a)(1)(A)(II).

randum of Objections involves the special master's award of compensation to petitioners in four, equal, annual installments. Respondent's Motion for Review and Memorandum of Objections in this regard is vague and ambiguous. Moreover, it is based on an incorrect interpretation of § 300aa–15(f)(4) of the Vaccine Act.[6] However, it is not the duty of this court to try to make sense of respondent's allegations. As stated earlier, in reviewing a special master's decision in a case arising under the Vaccine Act, the court should set aside the special master's decision only upon a finding that it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Section 300aa–12(e)(2)(B).

Section 300aa–15(f)(4)(B)[7] requires that compensation be paid in four, equal, annual installments. It then provides for the special master to order that all or a portion of the money may be used to purchase an annuity, or be invested in some other specific manner, with the consent of the petitioner, in situations in which the special master finds that the best interests of the petitioner would be served by such an order. This option was probably placed in the statute for use by the special master in circumstances when the special master has reason to believe that the child on behalf of whom the suit has been filed, and/or the petitioner's guardian, is unable to properly manage the monies awarded to them, but the purchase of an annuity is in no way mandated by the statute.

Although the annuity option contained in section 300aa–15(f)(4) of the 1989 amendments to the Vaccine Act was not in effect when the evidentiary hearing was held on October 26, 1989 (the effective date of the 1989 amendments was December 19, 1989), the historical and statutory notes to the 1989 amendments state that section 300aa–15 "shall apply to all pending and subsequently filed petitions." *See* 42 U.S.C.A. § 300aa–10 n. 2 (West Supp.1990). Moreover, on December 20, 1989, the special master issued a notice and order which gave clear indication that the decision in

---

6. Due to the ambiguous wording of the respondent's Memorandum of Objections, it is impossible to determine exactly what relief the respondent is requesting. First, it appears that respondent would like the net present value of petitioners' award calculated on the basis of an annuity, but, later in its papers, respondent appears to be advocating awarding compensation in the form of an annuity. Respondent misconstrues section 300aa–15(f)(4) as "allow[ing] the special master to determine net present value by ordering compensation payment in the form of an annuity." This is not what that section of the Vaccine Act provides. Rather, it directs the special master to award compensation in an amount equal to the present value of all the elements of compensation found to be appropriate in a given case. The statute then allows the special master to order that all or part of the award be used to purchase an annuity. The computation of the net present value of the award does not, in any way, depend on whether the special master orders that award be used to purchase an annuity.

If respondent is suggesting that the special master should have awarded compensation in the form of an annuity, such an argument is without merit, since section 300aa–15(f)(4)(B), which is applicable to the instant case, clearly requires that the award be made in four, equal, annual installments, which then may be used to purchase an annuity, if so ordered by the special master. If Congress intended for the federal government to award compensation in the

form of an annuity, it would have explicitly stated so in the statute. The administration of annuities requires an expenditure of money and time that the special master does not have the authority to commit. If respondent believes that compensation to petitioners under the Vaccine Act should be made in the form of annuities, it must seek such direction in the legislature. This court cannot override the clear wording of section 300aa–15(f)(4)(B) of the Vaccine Act, which requires that compensation be paid to petitioners in four, equal, annual installments.

7. This section of the Vaccine Act applies to the compensation claims for a vaccine-related injury or death associated with the administration of a vaccine before the effective date of this subpart and reads as follows:

In the case of a payment of compensation under the Program to a petitioner for a vaccine-related injury or death associated with the administration of a vaccine before the effective date of this subpart the compensation shall be determined on the basis of the net present value of the elements of compensation and paid in 4 equal annual installments of which all or a portion of the proceeds may be used as ordered by the special master to purchase an annuity or otherwise be used, with the consent of the petitioner, in a manner determined by the special master to be in the best interests of the petitioner.

the instant case would be governed by the amended statute.

Petitioners presented evidence at the October 26, 1989 hearing, mostly in the form of expert witness testimony, on what they felt would be the appropriate manner in which to determine the net present value of any compensation to be awarded to the petitioners. Admission of this type of evidence into the record is appropriate, given the requirement that any award should equal the net present value of all the elements of compensation. The expert's testimony offered by the petitioners centered on the different present values of the award if used to buy municipal or taxable bonds, and discussed the effects of taxes and inflation on both options. There was also a dialogue with the expert witness about the cost of purchasing an annuity with the award, although the expert discouraged that option as being too expensive.

Special Master Gerard had an opportunity to observe petitioner Joyce Metzger at the evidentiary hearing while she testified. He had an opportunity to question her and make an evaluation about her fitness to administer Glen's funds. After doing so, he chose not to order that the award be invested in a certain manner, but left that decision to the discretion of the Metzgers. In his decision, Special Master Gerard appropriately calculated the present value of the amount of the award, using the requirements set out in section 300aa–15(f)(4)(B). The special master did not explicitly reject the option of ordering that the award be used to purchase an annuity, or be invested in some other fashion. However, after hearing the expert's testimony; including the admittedly brief, discussion of annuities, the special master, apparently, did not feel the need to supervise how the award is invested and seemed to feel that the petitioners would handle the award appropriately. He also rejected petitioners' request that the award be increased to adjust for the effect of federal and state income taxes, stating, "a prudent trustee would not invest the entire trust corpus solely in taxable investments." Moreover, the respondent has offered no evidence to demonstrate the need for the purchase of an annuity in this specific case.

The special master might have included his reasons for not exercising his discretionary authority to order that the award be used to purchase an annuity in his decision. However, his failure to do so does not require this court to overrule his decision if the decision is not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. Section 300aa–15(f)(4)(B) requires payment to be made in four, equal, annual installments and directs the special master to order that part or all of the payments be used to purchase an annuity when he feels that such an arrangement would be in the best interests of the petitioner. Neither respondent or the record in this case demonstrate why ordering the Metzgers to purchase an annuity would further the best interests of their son, Glen.[8] The court finds that the special master's decision to award compensation in four, equal, annual installments, to be invested as petitioners see fit, is in accordance with the law and should not be modified.

## CONCLUSION

For the foregoing reasons, on review of the record of the proceedings, the findings of fact and conclusions of law of the special master included in his decision, dated June

---

8. In support of its contention that the "annuity option" be exercised in this case, respondent discusses the benefits received by insurance companies who compensate policyholders in the form of annuities rather than lump sum payments. In its Memorandum of Objections accompanying its Motion for Review, the respondent asks this court to "consider the substantial cost benefit to the government by providing compensation in the form of an annuity." This argument, which is presented without any supporting authority, ignores the clear language section 300aa–15(f)(4)(B), which directs the special master to exercise the option of ordering that the award be used to purchase an annuity when it would be in the best interests of the petitioner, not the government, to do so.

15, 1990, are upheld and the special master's decision is AFFIRMED.

IT IS SO ORDERED.