**Debra L. DOLNEY, Petitioner,**

v.

**SECRETARY OF the DEPT. OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–422V.

United States Claims Court.

May 30, 1991.

---

Debra L. Dolney, pro se.

Laura S. Radack, with whom was Asst. Atty. Gen. Stuart M. Gerson, Dept. of Justice, Washington, D.C., for respondent.

## OPINION

HORN, Judge.

Petitioner, Debra L. Dolney, is before this court on petitioner's Motion for Review of Special Master Paul Baird's December 6, 1990 Order granting the respondent's Motion for Summary Judgment in the above-captioned case.

Petitioner, Debra L. Dolney, who is proceeding in this court *pro se*, seeks compensation under the National Vaccine Injury Compensation Program, established by the National Childhood Vaccine Injury Act of 1986 (codified as amended at 42 U.S.C.A. §§ 300aa–1—300aa–34 (West Supp.1990)) (Vaccine Act).[1] On May 17, 1990, Ms. Dolney filed her petition with the United States Claims Court for alleged injuries, including paralysis and diabetes, which she

---

1. (July 1, 1944, c. 373, Title XXI, § 2112, as added Nov. 14, 1986, Pub.L. 99–660, Title III, § 311(a), 100 Stat. 3761; Dec. 22, 1987, Pub.L. 100–203, Title IV, §§ 4303(d)(2)(A), 4307(3), 101 Stat. 1330–222, 1330–224 and amended Dec. 22, 1987, Pub.L. 100–203, Title IV, §§ 4303(d)(2)(A), 4307(3), 101 Stat. 1330–222, 1330–224, Pub.L. 100–203, Title IV, §§ 4307(3)(C), 4308, as amended and added July 1, 1988, Pub.L. 100–360, Title IV, § 411(*o*)(2), (3)(A), 102 Stat. 808; Dec. 19, 1989, Pub.L. 101–239, Title VI, § 6601(d)–(i), 103 Stat. 2286–2290; Nov. 3, 1990, Pub.L. 101–502, § 5(b), 104 Stat. 1286.)

alleged were the result of receiving a diphtheria-pertussis-tetanus (hereinafter "DPT") vaccination on March 26, 1959 and a polio vaccine on June 2, 1959.[2]

The special master, after conducting proceedings in the case, pursuant to the Vaccine Act, as amended, and the applicable, revised Vaccine Rules, effective January 18, 1990 (Vaccine Rules, Parts I and II),[3] signed an Order on December 6, 1990, granting Defendant's Motion for Summary Judgment. On December 26, 1990, petitioner filed her Motion for Review and Objections, together with a Memorandum of Objections. The case was assigned to this judge for further proceedings. After review of the records in the case, including all the filings submitted by both parties to the proceedings, for the reasons discussed more fully below, the findings of fact and conclusions of law of the special master are upheld and the decision of the special master is AFFIRMED.

## BACKGROUND

Based on the papers submitted by both parties and the record developed by the special master, it appears that petitioner, Debra L. Dolney, was born on September 30, 1954 in Ramsey County, Minnesota, and was legally adopted on November 29, 1955 in Hennepin County, Minnesota. Petition-

er's medical records indicate that she received a DPT booster shot on March 26, 1959 and the fourth in a series of polio vaccinations on June 2, 1959.

On July 31, 1959, subsequent to her mother's becoming aware of petitioner's excessive drinking of water following her fourth polio vaccination, Debra was examined by a Dr. Corum. The doctor indicated on his contemporaneous record that Debra may have diabetes. Debra was admitted to Tampa General Hospital on July 31, 1959. On this date, Ms. Dolney underwent an extensive physical examination. The results from a urinalysis, which was one of many tests done during this physical examination, indicated that she had a level of "sugar 4+." The results also indicated that she had "diabetes mellitus with incipient acidosis" and otitis media. Also, at the time of her departure from the hospital, the discharging physician diagnosed Ms. Dolney as having "diabetes mellitus." Since 1959, Debra Dolney has been treated for insulin-dependent diabetes and its resulting complications.

Following the filing in the United States Claims Court of the petition at issue in this case, the case was assigned to Special Master Paul Baird who conducted proceedings pursuant to the Vaccine Act and to the applicable Vaccine Rules.[4]

---

2. Petitioner seeks compensation for "past lost earnings" for approximately 35 years, "future earnings loss," "pain and suffering," "parental suffering," "medical care" and "custodial care."

3. The Vaccine Rules, RUSCC Appendix J, are divided into two parts. The first part covers rules for the special masters and the second part covers rules for review of the decisions of special masters by judges of the United States Claims Court. Because both parts use the same numbering systems (Part One includes paragraphs 1–21 and Part Two includes paragraphs 1–13), the references will be distinguished by the terms Vaccine Rules Part I (which covers review of the petition by a special master) and Vaccine Rules Part II (which covers review of the special master's decision by a judge).

4. Rule 4(a) of the Vaccine Rules, Part I:
 Within 30 days of the filing of a petition, respondent shall review the medical and other records to determine whether, in respondent's view, all records necessary to enable respondent to evaluate the merits of the claim have

been supplied with the petition. If respondent's representatives considers [sic] that relevant records are missing, petitioner's counsel shall immediately be so notified. If the parties disagree about the completeness of the records filed or the relevance of requested records, either party may request that the special master resolve the matter. If the special master concludes that records called for by Vaccine Rule 2(e) have not been submitted, the petition may be subject to dismissal without prejudice under Vaccine Rule 21(c).
Rule 6 of the Vaccine Rules, Part I:
 The special master shall conduct conferences from time to time in order to expedite the processing of the case. The conferences will be informal in nature and ordinarily will be conducted by telephone conference call. Either party may request a status conference at any time. At such conferences, counsel for both parties will have the opportunity to propose procedures by which to process the case in the least adversarial, most efficient way possible.

According to a Memorandum Order issued by the special master on June 26, 1990, respondent's counsel, in compliance with the Vaccine Act and Vaccine Rules, had contacted petitioner by telephone and had requested additional medical records, as well as an affidavit from a medical doctor to document the causation of the alleged injuries. A telephone status conference was scheduled, and took place on June 25, 1990, when the parties failed to agree on the production of additional information or documentation to be submitted by the respondent.

At the status conference on June 25, 1990, the special master explained to the petitioner that diabetes is not an injury listed on the Vaccine Injury Table for either the DPT or polio vaccine and that, therefore, in order to recover under the Vaccine Act, the petitioner would have to prove that one or more of the vaccines administered actually caused the diabetes. Moreover, the special master explained to the petitioner that under the Vaccine Act, entitlement to compensation may not be based solely on the claims of the petitioner, but must also be substantiated by medical records or medical opinions. At the conference on June 25, 1990, the special master issued a warning to the petitioner, which was clearly restated in the special master's Memorandum Order dated June 26, 1990, as follows:

> If no such affidavit [containing medical documentation that the petitioner was injured by the DPT or polio vaccine administered to her in 1959] is filed by the conclusion of the 30 day period of suspension and the petitioner has not requested additional time for filing, then the petition will be subject to dismissal.

On July 16, 1990, petitioner filed supplemental materials, including an affidavit from Dr. Jeffrey L. Miller, a rheumatologist and internist. Because respondent still considered Dr. Miller's statement to be inadequate on the issue of causation, on September 17, 1990, respondent filed a Report/Motion for Summary Judgment in accordance with Rule 8(d) of the Vaccine Rules, Part I. In the Report/Motion, respondent alleged that even after submission of the supplemental information, the petitioner still had failed to show a causal connection between the vaccine administered and the alleged injuries.

In an Order dated September 19, 1990, the special master concluded that petitioner's supplementary materials were inadequate on the issue of causation. In his Order, the special master tried to explain in detail why Dr. Miller's affidavit, included in the supplemental materials, was still insufficient. The special master stated: "The essence of Dr. Miller's opinion is that it is impossible to prove actual causation...." In the Order, Special Master Baird scheduled another telephone conference and wrote:

> Based on the current state of the record, respondent's motion appears meritorious and will be granted unless petitioner can satisfy the court that there remains a material issue of fact as to 1) whether a Table injury occurred or 2) whether the polio vaccine actually caused petitioner's diabetes.

On October 4, 1990, petitioner responded to respondent's Motion for Summary Judgment and requested a Directed Verdict in her favor. In her response, petitioner also accused both the respondent's counsel and the special master of falsehoods and deceit.

A telephonic status conference was held on October 5, 1990, and was memorialized by the special master in an Order issued October 10, 1990. In the October 10, 1990 Order, the special master granted the petitioner additional time, until November 5, 1990, to submit further information regarding any possible causal connection between petitioner's injuries and her polio vaccinations because petitioner indicated she was then undergoing additional medical examinations to determine the cause of her diabetes. Again, the special master indicated that if the petitioner failed to make a sufficient timely filing, the petition would be dismissed without further notice.

On November 13, 1990, petitioner filed additional medical records with the special master. These records included a Pathology Report from the H. Lee Moffitt Cancer

Center & Research Institute at the University of South Florida and a second letter, titled "Revision Consultation" from Dr. Miller, dated October 23, 1990.

On November 28, 1990, respondent filed a response to petitioner's submissions, renewed its Motion for Summary Judgment and asked that Ms. Dolney's petition for vaccine compensation be dismissed, with prejudice. Respondent's basis for reviewing its Motion for Summary Judgment was that petitioner had thus far failed to substantiate, to a reasonable degree of medical certainty, that her diabetes, and any other of her alleged injuries, were caused by any of the vaccinations received by her in 1959, either alone or in combination. On December 3, 1990, petitioner filed a response, which, once again, included unsupported allegations of misconduct by the respondent's counsel and by the special master throughout the case.

On December 6, 1990, the special master ruled in favor of the respondent. On December 26, 1990, petitioner filed a Motion for Review and Objections to the special master's Order with the United States Claims Court.

## DISCUSSION

■ It is initially the responsibility of the special master to determine whether a petitioner is eligible for compensation under the Vaccine Act, and, if so, the amount of such an award. After issuance of a report by the special master, review of that decision by a judge of the United States Claims Court is available to one or both of the parties pursuant to 42 U.S.C.A. § 300aa–12(e). In the absence of a motion for review of the special master's decision, the judgment becomes final. The relevant portion of § 300aa–12(e) reads as follows:

(e) Action by the United States Claims Court. (1) Upon issuance of the special master's decision, the parties shall have 30 days to file with the clerk of the United States Claims Court a motion to have the court review the decision. If such a motion is filed, the other party shall file a response with the clerk of the

United States Claims Court no later than 30 days after the filing of such motion. (2) Upon the filing of a motion under paragraph (1) with respect to a petition, the United States Claims Court shall have jurisdiction to undertake a review of the record of the proceedings and may thereafter—

(A) uphold the findings of fact or conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact and conclusion [sic] of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's direction.

Rule 5 of the Vaccine Rules, Part II, RUSCC, Appendix J, repeats the statutory direction.

This court has previously held that Congress intended that a decision of a special master be overturned only in limited circumstances when such a decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Metzger v. Secretary of the Dep't of Health & Human Services*, 22 Cl.Ct. 123, 127–128 (1990). *See also Loe v. Secretary of the Dep't of Health & Human Services*, 22 Cl.Ct. 430, 432 (1991); *Mobley v. Secretary of the Dep't of Human Services*, 22 Cl.Ct. 423, 426 (1991).

The Court of Appeals for the Federal Circuit has clearly articulated its understanding of what constitutes an arbitrary and capricious decision by a finder of fact. Citing *Heat & Control Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022 (Fed.Cir. 1986), the court in *Gamalski v. Secretary of Dep't of Health & Human Services*, 21 Cl.Ct. 450 (1990) wrote:

An abuse of discretion occurs when (1) the court's decision is "clearly unreasonable, arbitrary or fanciful" (*Northrop Corp. [v. McDonnell Douglas Corp.]*, 751 F.2d [395] at 399 [ (D.C.Cir.1984) ]); (2) the decision is based on an erroneous

conclusion of law (*Ariel [v. Jones]*, 693 F.2d [1058] at 1060 [ (11th Cir.1982) ], citing *Premium Service Corp. [v. Sperry & Hutchinson Co.]*, 511 F.2d [225] at 229 [ (9th Cir.1975) ]); (3) the court's findings are clearly erroneous (*Deitchman [v. E.R. Squibb & Sons, Inc.]*, 740 F.2d [556] at 564 [ (7th Cir.1984) ]); or (4) the record contains no evidence on the which the district court rationally could have based its decision (*e.g., Ariel*, 693 F.2d at 1060). However, "[t]he phrase [abuse of discretion] means ... that the court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Kern v. TXO Production Corp.*, 738 F.2d 968, 970 (8th Cir.1984); *Dart Industries, Co. [v. Westwood Chemical Co.]*, 649 F.2d [646] at 648 [ (9th Cir.1980) ], citing *Premium Service Corp.*, 511 F.2d at 229.... "Such abuses ... [of discretion] must be unusual and exceptional; we will not substitute our judgment for that of the trial judge." 511 F.2d at 229 (citation omitted). *Gamalski*, 21 Cl.Ct. at 451–452.

■ Therefore, when reviewing the decision of the special master in the instant case, this court must act in the role of an appellate, reviewing authority and should only overturn Special Master Baird's Order if the petitioner can demonstrate that he acted arbitrarily, capriciously, abused his discretion or acted otherwise not in accordance with the law.

A petitioner, under the Vaccine Act, injured before November 14, 1986 may be entitled to receive compensation under § 300aa–15(b) of the Vaccine Act, as amended, if the alleged injury is listed in the Vaccine Injury Table included in § 300aa–14 of the Vaccine Act, as amended. Section 300aa–14 of the Vaccine Act contains the Vaccine Injury Table which sets the basic framework for when a petitioner may receive compensation.[5]

5. § 300aa–14 Vaccine injury table.
(a) Initial table. The following is a table of vaccines, the injuries, disabilities, illnesses, conditions, and deaths resulting from the administration of such vaccines, and the time period in which the first symptom or manifestation of onset or of the significant aggravation of such injuries, disabilities, illnesses, conditions, and deaths is to occur after vaccine administration for purposes of receiving compensation under the Program.

VACCINE INJURY TABLE

I. DTP; P; DTP/Polio Combination; or Any Other Vaccine Containing Whole Cell Pertussis Bacteria, Extracted or Partial Cell Bacteria, or Specific Pertussis Antigen(s).

| Illness, disability, injury, or condition covered: | Time Period for first symptom or manifestation of onset or of significant aggravation after vaccine administration: |
| --- | --- |
| A. Anaphylaxis or anaphylactic shock | 24 hours |
| B. Encephalopathy (or encephalitis) | 3 days |
| C. Shock-collapse or hypotonic-hyporesponsive collapse | 3 days |
| D. Residual seizure disorder in accordance subsection (b)(2) | 3 days |
| E. Any acute complication or sequela (including death) of an illness, disability, injury, or condition referred to above which illness, disability, injury, or condition arose within the time period prescribed | Not applicable |

II. Measles, mumps, rubella, or any vaccine containing any of the foregoing as a component; DT; Td; or Tetanus Toxoid.

| | |
| --- | --- |
| A. Anaphylaxis or anaphylactic shock | 24 hours |

(Footnote 5 continued on p. 343)

It is clear from the statute that neither diabetes nor anemia are listed in the Vaccine Injury Table as injuries, disabilities, illnesses or conditions resulting from the administration of a vaccine which is included as compensable under the statute. Consequently, as the special master pointed out in his Order filed December 6, 1990:

> Therefore, diabetes would be compensable under the Program only if it were proven by a preponderance of the evidence that the polio vaccine administered to the petitioner actually caused her diabetes or that the diabetes was an acute

complication or sequela of either paralytic polio or anaphylaxis.

Although the special master correctly articulated the standard regarding the petitioner's burden of proof, he failed to cite to any authority. The relevant authority is set out in 42 U.S.C.A. §§ 300aa–13(a)(1)(A)–(B)[6] and 42 U.S.C.A. § 300aa–11, particularly in 42 U.S.C.A. § 300aa–11(c)(1)(C)(ii).[7] Moreover, the Vaccine Act provides that, even in vaccine proceedings for summary judgment, "[t]he special master or court may not make such a finding [of entitlement to compensation] based on the claims of the petitioner alone, unsubstantiated by

Footnote 5 continued.

| | |
|---|---|
| B. Encephalopathy (or encephalitis) ........ | 15 days (for mumps, rubella, measles, or any vaccine containing any of the foregoing as a component). 3 days (for DT, Td, or tetanus toxoid). |
| C. Residual seizure disorder in accordance with subsection (b)(2) ............... | 15 days (for mumps, rubella, measles, or any vaccine containing any of the foregoing as a component). 3 days (for DT, Td, or tetanus toxoid). |
| D. Any acute complications of sequela (including death) of an illness, disability, injury, or condition referred to above which illness, disability, injury, or condition arose within the time period prescribed ............................ | Not applicable |
| III. Polio Vaccines (other than Inactivated Polio Vaccine). | |
| A. Paralytic polio | |
| —in a non-immunodeficient recipient ... | 30 days |
| —in a immunodeficient recipient........ | 6 months |
| —in a vaccine-associated community case ................................... | Not applicable |
| B. Any acute complication or sequela (including death) of an illness, disability, injury, or condition referred to above which illness, disability, injury, or condition arose within the time period prescribed | Not applicable |
| IV. Inactivated Polio Vaccine. | |
| A. Anaphylaxis or anaphylactic shock ...... | 24 hours |
| B. Any acute complication or sequela (including death) of an illness, disability, injury, or condition referred to above which illness, disability, injury, or condition arose within the time period prescribed | Not applicable |

**6. § 300a–13. Determination of eligibility and compensation**

(a) General rule. (1) Compensation shall be awarded under the Program to a petitioner if the special master or court finds on the record as a whole—

(A) that the petitioner has demonstrated by a preponderance of the evidence the matters required in the petition by section 2111(c)(1) [42 U.S.C.S. § 300aa–11(c)(1)], and

(B) that there is not a preponderance of the evidence that the illness, disability, injury, condition or death described in the petition is due to factors unrelated to the administration of the vaccine described in the petition.

**7. § 300aa–11. Petitions for compensation**

(c) Petition content. A petition for compensation under the Program for a vaccine-related injury or death shall contain—

(1) except as provided in paragraph (3), an affidavit, and supporting documentation, demonstrating that the person who suffer such injury or who died—

(C)(ii)(I) sustained, or had significantly aggravated, any illness, disability, injury, or condition not set forth in the Vaccine Injury Table but which was caused by a vaccine referred to in subparagraph (A).

medical record or by medical opinion." 42 U.S.C.A. § 300aa–13(a)(1).[8]

Summary judgment procedures in vaccine injury cases, such as the one at bar, are governed by a combination of the Vaccine Act, the Rules of the United States Claims Court (RUSCC) and Appendix J of RUSCC, which contains the rules specifically applicable to proceedings in vaccine cases (Vaccine Rules Parts I and II). When the Vaccine Act was passed, 42 U.S.C.A. § 300aa–12(d)(2)(C) directed that the United States Claims Court promulgate rules which include the opportunity for summary judgment in vaccine cases. In compliance with this direction, Rule 8(d) of Part I of the Vaccine Rules authorizes a special master to decide a vaccine case on summary judgment, without an evidentiary hearing, as follows:

> The special master may decide a case on the basis of written filings without an evidentiary hearing. In addition, the special master may decide a case on summary judgment, adopting procedures set forth in RUSCC 56 modified to the needs of the case.

Finally, RUSCC 56(c), which is incorporated into and referenced in Rule 8(d) of Part I of the Vaccine Rules, found in Appendix J of RUSCC, gives more specific guidance regarding the procedures associated with a motion for summary judgment in all cases adjudicated in the United States Claims Court, including vaccine cases.

■ Summary Judgment is appropriate only when the pleadings raise no genuine dispute as to any material fact and as a matter of law the movant is entitled to judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505,

2509–2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of demonstrating an absence of evidence that may support any genuine issue of material fact. Any significant doubt over factual issues is to be resolved in favor of the nonmoving party. *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir. 1987). *Curtis v. United States,* 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216 (Ct.Cl.1958), *cert. denied,* 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959). The burden of proof is on the movant to come forward with evidence supporting its allegation, and not on the respondent. If both parties, the moving and nonmoving party, do not dispute a fact that is vital to the outcome of the case, then summary judgement may be granted.

■ Unlike the situation in other summary judgment proceedings, under the Vaccine Act, a mere allegation by the moving party of a medical condition, even if it is uncontested and included in the petition, does not rise to the level of fact, unless supported by specific medical evidence. *See* 42 U.S.C. § 300aa–13(a)(1). In other civil cases, a finder of fact may rely on unsubstantiated, unrefuted allegations in a complaint for the purposes of deciding the summary judgment motion only. In vaccine cases, however, unsubstantiated allegations of medical conditions are not a basis on which a finder of fact can conclude that a petitioner is entitled to compensation.

■ In her petition and her numerous additional filings, Ms. Dolney has made many allegations regarding her injuries. She alleges that she is affected with paral-

---

**8.** Likewise, as to 42 U.S.C.A. § 300aa–11(c)(1), subsection (C)(ii), subparts (I) and (II), the House Report accompanying the original Act stated:

> ... the petition must affirmatively demonstrate that the injury or aggravation was caused by the vaccine. Simple similarity to conditions or time periods listed in the Table is not sufficient evidence of causation; evidence in the form of scientific studies or expert medical testimony is necessary to demonstrate causation for such a petitioner. (Such a finding or causation is deemed to

exist for those injuries listed in the Table which occur within the time period set forth in the Table.) The Committee does not intend, however, to suggest [sic] that variance from the Table should act as a presumption against the petitioner but rather only that such a petitioner is not to be deemed to be eligible for compensation without further showings of causation.

H.R.Rep. No. 908, 99th Cong., 2nd Sess., pt. 1, at 15, *reprinted in,* 1986 U.S.Code Cong. & Admin.News 6287, 6344, 6356.

ysis,[9] "paralytic polio" and diabetes. Among other claims, she alleges that her injuries were caused by the DPT vaccine and the polio vaccine because the two vaccines were administered to her too close in time one to the other.[10]

Although the petitioner, Ms. Dolney, tries to frame her claim as based on medical difficulties caused by the interaction of the two vaccines, the special master also reviewed petitioner's claim as to whether or not any of Ms. Dolney's injuries were caused by either the DPT or the polio vaccines, individually. However, when reviewed on the basis of whether either individual vaccine caused petitioner's injuries, petitioner's claims once again fail. She never introduces sufficient evidence to classify herself as having paralytic polio as she alleges. Although the petitioner does introduce medical records indicating that she is suffering from diabetes, she fails to introduce evidence to show that her diabetes was caused by either, or a combination, of the vaccines.[11] Dr. Miller, petitioner's medical expert, in an almost incomprehensible paragraph included in his letter dated July 29, 1990, attempts to reach a legal conclusion regarding eligibility for compensation, rather than a medical conclusion regarding the petitioner's medical diagnosis and/or the cause of any disease. He tried hard to fit the patient, Ms. Dolney, within the parameters of the statute. Dr. Miller wrote:

According to Public Law 99–660, Section 2114A, the patient appears to have had diabetes as a reaction to paralytic polio vaccine on 6/2/59 in a non-immunodeficient recipient. This is a very interesting phenomenon and would allow the patient to have qualified as a vaccine injury. That the patient became diabetic is uncontrovertible. The date that she became diabetic must be put between June 2, 1959 and approximately June 30, 1959 when, according to her parents, she started to become symptomatic from diabetes. Since diabetes does not become symptomatice [sic] instantaneously, I believe the overwhelming evidence is that the diabetes started within 30 days of June 2, 1959.

In this paragraph, Dr. Miller was less than conclusive, in rendering his medical judgment, when he chose to write: "The patient *appears to have* had diabetes as a reaction to paralytic polio vaccine on 6/12/59 ..." (emphasis added), and later in the same paragraph also stated: "It is not possible to say that the diabetes was not caused by the polio vaccine." Neither in this letter, nor in any other document he submitted, did Dr. Miller ever conclude, with the degree of certainty required by the vaccine statute to entitle the petitioner to compensation, that the polio inoculation, or any other vaccination, caused this patient's diabetes.

Absent evidence in the record which medically classifies Ms. Dolney as a para-

9. In her petition Debra Dolney describes herself as having fingers that are curved, legs that are of different length, a stiff back, a nasal voice, and muscle oddities. Ms. Dolney alleges that these are all signs of paralytic polio.

10. Petitioner also seeks compensation under the Vaccine Act for other injuries including: (1) immunodeficiency, and (2) anemia. However, petitioner fails to introduce evidence proving that she may be medically classified as an "immunodeficient deficient". Furthermore, although petitioner's medical reports indicate that she has anemia, she fails to offer evidence as to what caused it. Her pathology report from the H. Lee Moffitt Cancer Center & Research Institute specifically states "Anemia Etiology Unknown...." Moreover, Dr. Miller, in his supporting affidavits and letters, does not discuss any causation for the petitioner's anemia.

11. It is not enough for petitioner to allege that the vaccine administered to Ms. Dolney in 1959 was not a 100% inactive vaccine. Petitioner would still not be entitled to receive compensation if she cannot prove that she even had paralytic polio. Ms. Dolney's baby book and medical records, in fact, do not indicate whether she received an inactive or active polio vaccination. Petitioner merely asserts, without any supporting evidence, that she received an early version of the "Salk Vaccine" which she alleges was not 100% inactive. In her petition, petitioner said "[t]he point of this case is that the diagnosis of 'diabetes' as the lone disease of the injury is incorrect. Vaccine injury causing paralytic polio as well as diabetes should have been listed, and probably was but the records were removed."

lytic due to polio, and/or evidence which proves that the vaccines caused her diabetes, this court may not treat petitioner, for the purposes of awarding compensation, as if she were in fact suffering from "paralytic polio" or had been a victim of that disease. Moreover, the court may not conclude that either the combination of the two vaccines administered or one of the two vaccines administered caused her diabetes.

Citing to *Hasler v. United States*, 718 F.2d 202 (6th Cir.1983), *cert. den.*, 469 U.S. 817, 105 S.Ct. 84, 83 L.Ed.2d 31 (1984), the court in *Strother v. Secretary of HHS*, 21 Cl.Ct. 365, 370 (1990), held that "[c]ausation in fact requires proof of a logical sequence of cause and effect showing that the vaccination was the reason for the injury. A reputable medical or scientific explanation must support this logical sequence of cause and effect." Moreover, although the Vaccine Injury Table included in the Vaccine Act permits this court to presume that an injury listed in the Vaccine Injury Table, occurring within the time frame predetermined by 42 U.S.C.A. § 300aa–14, was caused by a vaccine listed in the table, such causation is not presumed for a "non-table injury," which is not listed in the Vaccine Injury Table, such as diabetes. Moreover, it is clear that, as indicated by the *Strother* court, "[t]o prove causation in fact, petitioners must show a medical theory causally connecting the vaccination and the injury." *Strother*, 21 Cl.Ct. at 369.

In the instant case, because the petitioner fails to prove that she suffers from paralytic polio, one never reaches the issue of what may have caused the disease. And, although petitioner seems to establish that she is suffering from diabetes, she fails to introduce evidence into the record that the disease was caused by the DPT and/or polio vaccinations she received.

In her various filings, petitioner also makes numerous allegations questioning the propriety of the conduct during the proceedings by the special master and the attorney for the respondent. Petitioner's many, many allegations include that: the special master lacked discretion as he used the respondent's trial attorney as his confidant and counsel; the special master would not know anything about the case except what she coached him; at the last status conference, with a clenched teeth voice, he snarled, "I don't care if you had the shot one day before you got diabetes! You're going to have to prove it to the government"; [12] the attorney for respondent deceived the court when she said there exists no genuine issue as to any material fact; the court does not seem to question their fabrications and uses these lies as a factor; the following falsehoods and taradiddles are listed: deceit, treachery, falsification, lie; there is an appearance that the HHS lawyers are running the show; it is a slight of hand magic show with deceit as the key ingredient; distortion in rude form; what liars; possibly the lawyer for HHS has altered her copy of the petition that my anemia was treated; asinine; misrepresents; ridicules; makes-up; twists to throw the court off of the issue; looks the other way; crude and a poor example of fairness and justice.

 There is a strong, albeit rebuttable, presumption of good faith regarding the official actions of public officials, including a special master. Much of the case law available to support the notion that

---

**12.** This status conference was recorded but prior to petitioner's Motion for Review had not been included in the record. Consequently, in order for this court to make a complete and fair review of the case and the petitioner's allegations, the judge remanded the case to Special Master Baird so that he could include the tape of the transcript of the October 5, 1990 status conference in the record. On January 23, 1991, pursuant to this Order, Special Master Baird filed the cassette tape and made it part of the record. Based on the recorded transcript of this October 5, 1990 status conference, the spe-

cial master, in fact, acted in a patient and polite manner. He carefully explained the statutory requirements of the Vaccine Act to Ms. Dolney multiple times and asked her on several occasions whether or not she understood them. He also methodically answered any of petitioner's questions and asked her whether or not she understood his answers. Contrary to the special master's demeanor, Ms. Dolney's behavior was sometimes abrupt and rude. At least six times in the recorded hearing, Ms. Dolney interjected while the special master spoke, not allowing him to complete a sentence.

public officials are presumed to have acted responsibly and in good faith in the discharge of their official duties derives from administrative actions in the executive branch. In *William E. Gaskins v. United States*, 227 Ct.Cl. 563, 652 F.2d 70 (1981), the court stated that "[t]he presumption is that government officials have acted in good faith in making their decisions. It takes almost irrefragable proof to overcome the presumption. The burden is on the plaintiff." *Id.* at 566, 652 F.2d 70; see also *Gonzales v. Defense Logistics Agency*, 772 F.2d 887, 889 (Fed.Cir.1986); *Eagle Constr. Corp. v. United States*, 4 Cl.Ct. 470, 479 (1984); *P. Francini & Co. v. United States*, 2 Cl.Ct. 7, 11 (1983); *Robert J. Brousseau v. United States*, 226 Ct.Cl. 199, 208, 640 F.2d 1235, 1241 (1981); *Samuel C. Wathen, Jr. v. United States*, 208 Ct.Cl. 342, 351, 368, 527 F.2d 1191, 1197 (1975), *cert. den.*, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976). Finders of fact, such as judges, members of review boards in judicial and quasi-judicial proceedings are also presumed to have carried out their duties in a similar responsible manner.

Likewise, reviewing appellate courts are reluctant to overturn the decisions of trial courts, absent a clear showing of error or impermissibly tainted behavior. In *Inwood Laboratories v. Ives Laboratories*, 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982), the Supreme Court described the standard by which a Circuit Court ought to review a trial level judge as follows:

> In reviewing the factual findings of the District Court, the Court of Appeals was bound by the 'clearly erroneous' standard of Rule 52(a), Federal Rules of Civil Procedure. *Pullman–Standard v. Swint, ante,* [456 U.S.] p. 273 [102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)]. That Rule recognizes and rests upon the unique opportunity afforded the trial court judge to evaluate the credibility of witnesses and to weigh the evidence. *Ze-*

*nith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123 [89 S.Ct. 1562, 1576, 23 L.Ed.2d 129] (1969). Because of the deference due the trial judge, unless an appellate court is left with the 'definite and firm conviction that a mistake has been committed,' *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 [68 S.Ct. 525, 542, 92 L.Ed. 746] (1948), it must accept the trial court's findings.

*Inwood,* 456 U.S. at 855, 102 S.Ct. at 2189.

The special masters, who are appointed by the United States Claims Court to handle vaccine cases, are given the responsibility to make findings of fact in cases filed under the Vaccine Act by that Act. The judges of the United States Claims Court, who review the decisions of the special masters, are, therefore, cast in the role of an appellate tribunal. Moreover, as discussed above, the statutory standard included in the Vaccine Act dictates that a special master's decision in a vaccine case may only be overturned if it is found to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 42 U.S.C.A. § 300aa–12(e)(2)(B).

 Upon review of the record in this case, including all the material supplied by petitioner and counsel for respondent, this court finds petitioner's accusations regarding the integrity of the special master and counsel for respondent to be groundless. Petitioner has failed to introduce any evidence to support her numerous claims of improper, impermissible or biased behavior. Moreover, the record shows that the special master tried hard to explain to this *pro se* plaintiff the standards by which a vaccine petitioner could be found eligible for compensation, repeatedly gave her extensions of time in which to obtain and present additional information and repeatedly asked her during the course of the proceedings whether she understood what was transpiring.[13] Likewise, the record does

---

13. For example, the special master granted petitioner a 30 day extension; before granting the 30 day extension he even asked petitioner if she needed two months (however petitioner did not know how much additional time she would

need); in the October 5, 1990 status conference, he explained the statutory requirements to the petitioner several times; in the October 5, 1990 status conference, he explained to petitioner how to properly file motions; he phrased the

not show that the respondent's attorney treated the petitioner with anything other than courtesy, respect and patience.

## CONCLUSION

The record presents a picture of an unfortunate, but confused petitioner, who has not been able to substantiate her claims. Mere allegations of events or injury are an insufficient basis upon which to award compensation. Ms. Dolney has failed to provide proof of her alleged paralytic polio condition and has failed to provide any evidence that her diabetes was caused by any vaccination or combination of vaccines she received in 1959.

Petitioner, therefore, is not entitled to compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C.A. §§ 300aa–1—300aa–34 (West Supp.1990). The decision of the special master granting summary judgment for the respondent is, hereby, AFFIRMED.

IT IS SO ORDERED.

issue as whether the DPT or polio vaccines caused her diabetes rather than whether DPT together with the polio vaccines caused her medical problems; and he changed the initial date and time set for the October 1990 status conference, pursuant to petitioner's request.