**Janine M. NEHER, a minor, by her parents and legal representatives, Douglas NEHER and Jean Royce Neher, Petitioners,**

v.

**SECRETARY OF THE DEPT. OF HEALTH AND HUMAN SERVICES, Respondent.**

**No. 90–431V.**

United States Claims Court.

June 27, 1991.

Thomas G. Wilson, Boca Raton, Fla., for petitioners, with whom was Andrew W. Dodd, Torrance, Cal., of counsel.

Nina S. Pelletier, with whom were Asst. Atty. Gen. Stuart M. Gerson, and Director Helene M. Goldberg, Dept. of Justice, Washington, D.C., for respondent.

## OPINION [1]

HORN, Judge.

This is an action for compensation for a vaccine-related injury to petitioner, Janine

1. This Opinion may contain material which should not be disclosed to a non-party pursuant

M. Neher, brought on her behalf by her parents, Douglas Neher and Jean Royce Neher. Petitioner seeks compensation under The National Vaccine Injury Compensation Program, as established by The National Childhood Vaccine Injury Act of 1986 (codified, as amended, at 42 U.S.C.A. §§ 300aa–1—300aa–34 (West Supp.1990)) (Vaccine Act).[2]

Respondent, Secretary of the Department of Health and Human Services (HHS), conceded that petitioner is entitled to compensation under the Vaccine Act. A hearing on appropriate damages was conducted on February 22, 1991 before Chief Special Master Golkiewicz. On March 18, 1991, the chief special master filed his final Decision awarding petitioner compensation. The award consisted of an annuity, to be purchased by the respondent to cover the annual projected costs of care for the petitioner in the amount of $16,200 in annual costs for the first year after the award and $49,800 in annual costs thereafter. The award also included a $100,000 lump sum payment to be paid in four equal, annual installments of $25,000, "to give a small level of flexibility to the plan to deal with fluctuations in the yearly inflation rates and relatively minor changes in service needs not accounted for by the above levels of compensation."

The case is now before the United States Claims Court on respondent's motion to review that portion of the award which gave the petitioner a $100,000 lump sum to provide for fluctuations in the yearly inflation rates and relatively minor changes in service needs. Respondent alleges that the chief special master's award of the $100,-

000 is arbitrary, capricious, an abuse of discretion and not in accordance with the law.

After reviewing the submissions of the parties, the court has determined that the issue on which the respondent seeks review is clearly set out in the pleadings and the administrative record and that no oral argument is necessary for this court to reach its decision. After consideration of respondent's motion for review, petitioner's response, and the record on file in the case, this court finds that Chief Special Master Golkiewicz erred when he awarded petitioner $100,000 in a lump sum payment in addition to the annuity. For the reasons discussed more fully below, the award of the $100,000 lump sum by the chief special master is REVERSED; judgment for the petitioner should be entered to cover the costs of purchasing an annuity to fund the annual, projected costs of care for the petitioner in the amount of $16,200 in annual costs for the first year after the award and $49,800 in annual costs thereafter.

## BACKGROUND

Petitioner's representatives, Douglas Neher and Jean Royce Neher, filed their petition on behalf of their daughter, Janine M. Neher, for compensation under the Vaccine Act on May 21, 1990. They claimed that Janine's injuries were caused by a diphtheria-pertussis-tetanus (DPT) vaccine she received on May 22, 1967. Respondent conceded that petitioner was entitled to compensation under the Vaccine Act. The only matter at issue before the chief special master, therefore, was the appropriate amount of compensation.[3]

---

to 42 U.S.C. § 300aa–12 (1987). The parties shall therefore designate, within 14 days from the date of the Opinion, any material subject to § 300aa–12. Said material will be deleted from the Opinion prior to public distribution. If neither party files objections within this 14–day period, the court will assume that the Opinion contains no material subject to § 300aa–12.

2. July 1, 1944, c. 373, Title XXI, § 2112, as added Nov. 14, 1986, Pub.L. No. 99–660, Title III, § 311(a), 100 Stat. 3761; Dec. 22, 1987, Pub.L. No. 100–203, Title IV, §§ 4303(d)(2)(A), 4307(3), 101 Stat. 1330–222, 1330–224 and amended Dec. 22, 1987, Pub.L. No. 100–203,

Title IV, §§ 4303(d)(2)(A), 4307(3), 101 Stat. 1330–222, 1330–224, Pub.L. No. 100–203, Title IV, §§ 4307(3)(C), 4308, as amended and added July 1, 1988, Pub.L. No. 100–360, Title IV, § 411(o)(2), (3)(A), 102 Stat. 808; Dec. 19, 1989, Pub.L. No. 101–239, Title VI, § 6601(d)–(i), 103 Stat. 2286–2290; Nov. 3, 1990, Pub.L. No. 101–502, § 5(b), 104 Stat. 1286.

3. Because of the narrow issue of this appeal and respondent's concession of entitlement to compensation, an in-depth analysis of the facts and circumstances leading up to the filing of the petitioner's claim is not considered necessary.

On February 22, 1991, a hearing on damages was conducted by telephone and on March 18, 1991, the chief special master issued his final Decision setting the levels of compensation. The Decision called for an annuity to be purchased by respondent to pay out the monthly benefits necessary to fund the annual costs of care for the petitioner, as found by the chief special master to be supportable by the facts in the record and an additional $100,000 lump sum payment. The award was detailed in the chief special master's Decision, as follows:

| | 1st yr. | 2nd yr. +[4] |
|---|---|---|
| Therapies/attendant care | $12,000 | |
| Group Home | | $14,400 |
| Therapeutic services | | $31,200 |
| Medications & related medical services | $ 4,200 | $ 4,200 |
| Total | $16,200 | $49,800 |

In addition, a lump sum payment of $100,000 is provided to give a small level of flexibility to the compensation plan to deal with fluctuations in the yearly inflation rates and relatively minor changes in service needs not accounted for by the above levels of compensation.

Payment of this compensation shall be made through the combination of a $100,-000 lump sum to be paid in four equal annual installments of $25,000 and through an annuity paying out the monthly benefits necessary to fund the above annual costs. Respondent shall purchase and take ownership of an annuity contract from an A+ (superior) company with a rating of class VI or better. The contract shall be based on a growth factor of 5% compounded annually.

4. Although the special master does not specifically say so in his Decision, the "+" which follows the "2nd yr" in the table detailing the award to be given to petitioner appears to refer to the second year and those years following the second year, for the duration of the petitioner's natural life.

5. In his Decision, the chief special master indicated that he was awarding damages based on "the court's findings ..., and the lack of any substantive disagreement thereto...." In its Motion for Review the respondent, however, indicated that although the special master had issued a bench ruling, followed by an Order, which included a proposed ruling on February

*Neher v. Secretary of the Dept. of Health and Human Services*, No. 90–431V, slip op. at 2, 1991 WL 44451 (Cl.Ct. Special Master March 18, 1991).

Respondent filed a Motion for Review on April 17, 1991[5] and on May 16, 1991, petitioner filed a response. Subsequently, on June 18, 1991, the petitioner filed a Notice of Additional Authority with this court.

## DISCUSSION

Respondent has asked for review of the chief special master's decision on only one very narrow issue. The question at issue involves the propriety of the chief special master's award of the $100,000 lump sum, over-and-above the award of the annuity to be purchased to cover the petitioner's, projected, injury-related, annualized expenses.

Following the filing of a motion to review by either party, the Claims Court, pursuant to section 300aa–12(e)(2) of the Vaccine Act, may:

(A) uphold the findings of fact or conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's direction.

27, 1991, and which gave the parties until March 4, 1991 to detail any disagreements thereto, the respondent did not receive the February 27, 1991 Order until March 5, 1991. Moreover, respondent is correct in pointing out that nothing in the chief special master's Order, in the Vaccine Act or in the applicable Rules of the United States Claims Court (RUSCC), including Appendix J to those Rules, which governs proceedings by the special master, precludes the respondent from filing a Motion for Review with the United States Claims Court within 30 days of the issuance of a special master's Opinion. 42 U.S.C.A. § 300aa–12(e).

42 U.S.C.A. § 300aa–12(e)(2). Rule 5 of the Vaccine Rules, Part II, RUSCC, Appendix J, repeats the statutory direction.[6]

Citing to the Report of the Conference Committee of the House & Senate on the 1989 Amendments to 42 U.S.C.A. § 300aa–12(e)(2), 135 Cong.Rec. H9477 (daily ed. Nov. 21, 1989), this court has previously held that Congress intended that a decision of a special master be overturned only in limited circumstances and only when such a decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Dolney v. Secretary of HHS*, 23 Cl.Ct. 337, 341–342, (Cl.Ct.1991); *Metzger v. Secretary of HHS*, 22 Cl.Ct. 123, 127–28 (1990); *see also Loe v. Secretary of HHS*, 22 Cl.Ct. 430, 432 (1991); *Mobley v. Secretary of HHS*, 22 Cl.Ct. 423, 426 (1991).

The Court of Appeals for the Federal Circuit has clearly articulated its understanding of what constitutes an arbitrary and capricious decision by a finder of fact. Citing *Heat & Control Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022 (Fed.Cir. 1986), the court, in *Gamalski v. Secretary of HHS*, 21 Cl.Ct. 450 (1990), wrote:

> An abuse of discretion occurs when (1) the court's decision is "clearly unreasonable, arbitrary or fanciful" (*Northrop Corp. [v. McDonnell Douglas Corp.]*, 751 F.2d [395] at 399 [ (D.C.Cir.1984) ]); (2) the decision is based on an erroneous conclusion of law (*Ariel [v. Jones]*, 693 F.2d [1058] at 1060 [ (11th Cir.1982) ], citing *Premium Service Corp. [v. Sperry & Hutchinson Co.]*, 511 F.2d [225] at 229 [ (9th Cir.1975) ]); (3) the court's findings are clearly erroneous (*Deitchman [v. E.R. Squibb & Sons, Inc.]*, 740 F.2d [556] at 564 [ (7th Cir.1984) ]); or (4) the record contains no evidence on which the district court rationally could have based its decision (*e.g., Ariel*, 693 F.2d at 1060). However, "[t]he phrase [abuse of

discretion] means ... that the court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Kern v. TXO Production Corp.*, 738 F.2d 968, 970 (8th Cir.1984); *Dart Industries, Co. [v. Westwood Chemical Co.]*, 649 F.2d [646] at 648 [ (9th Cir.1980) ], citing *Premium Service Corp.*, 511 F.2d at 229.... "Such abuses ... [of discretion] must be unusual and exceptional; we will not substitute our judgment for that of the trial judge." 511 F.2d at 229 (citation omitted).

*Gamalski*, 21 Cl.Ct. at 451–52.

■ Therefore, when reviewing the Decision of the chief special master in the instant case, this court must act in the role of an appellate, reviewing authority and should only overturn the Decision if the petitioner can demonstrate that the chief special master acted arbitrarily, capriciously, abused his discretion or acted otherwise not in accordance with the law. The subject for review is whether, as the respondent argues, the chief special master's award of the $100,000 lump sum payment is not a permissible part of the damage award under applicable statutes and precedent.

The general rule of damages is that: "... all damages resulting necessarily and immediately and directly from the breach are recoverable, and not those that are contingent and uncertain." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931). Once liability for damages is established, or, as in the instant case, conceded, "damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate." *Eastman Kodak Co. v. Southern*

---

**6.** The Vaccine Rules, RUSCC Appendix J, are divided into two parts. The first part covers rules for the special masters and the second part covers rules for review of the decisions of special masters by judges of the United States Claims Court. Because both parts use the same numbering systems (Part One includes paragraphs 1—21 and Part Two includes paragraphs 1—13), the references will be distinguished by the terms Vaccine Rules Part I (which covers review of the petition by a special master) and Vaccine Rules Part II (which covers review of the special master's decision by a judge).

*Photo Materials Co.*, 273 U.S. 359, 379, 47 S.Ct. 400, 405, 71 L.Ed. 684 (1927). Whether the damages are determined by a judicial factfinder or by a jury, "the damages must not be merely speculative ...," "too shadowy," or "too remote." *The Conqueror*, 166 U.S. 110, 127, 129, 17 S.Ct. 510, 516, 517, 41 L.Ed. 937 (1897). In other words, the amount of the damage award cannot "be determined by mere speculation or guess, but must be based on evidence furnishing data from which the amount of the probable loss could be ascertained as a matter of reasonable inference." *Eastman Kodak Co.*, 273 U.S. at 379, 47 S.Ct. at 405. The burden is not imposed on the plaintiff to show that damages can be calculated with absolute exactness, but, only that a reasonable basis for computation exists. *See, e.g., id.*

The Vaccine Act states that compensation to vaccine injury petitioners shall include:

(1)(A) Actual unreimbursable expenses incurred from the date of the judgment awarding such expenses and reasonable projected unreimbursable expenses which—

(i) result from the vaccine-related injury for which the petitioner seeks compensation,

(ii) have been or will be incurred by or on behalf of the person who suffered such injury, and

(iii)(I) have been or will be for diagnosis and medical or other remedial care determined to be reasonably necessary, or

(II) have been or will be for rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy, residential and custodial care and service expenses, special equipment, related travel expenses, and facilities determined to be reasonably necessary.

(B) Subject to section 300aa–16(a)(2) of this title, actual unreimbursable expenses incurred before the date of the judgment awarding such expenses which—

(i) resulted from the vaccine-related injury for which the petitioner seeks compensation,

(ii) were incurred by or on behalf of the person who suffered such injury, and

(iii) were for diagnosis, medical or other remedial care, rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy, residential and custodial care and service expenses, special equipment, related travel expenses, and facilities determined to be reasonably necessary.

42 U.S.C.A. § 300aa–15(a)(1).

For vaccines administered before the effective date of the Vaccine Act, compensation may also include:

(1) lost earnings (as provided in paragraph (3) of subsection (a) of the section),

(2) pain and suffering (as provided in paragraph (4) of subsection (a) of this section), and

(3) reasonable attorneys' fees and costs (as provided in subsection (e) of this section).

42 U.S.C.A. § 300aa–15(b).

From the legislative history of the Vaccine Act, it is clear that in the many drafts of the Act in both the House and Senate, specific categories of compensation were listed. Moreover, the calculation of the amount of the award was directed to be made on the basis of net present value which accounts for inflation. 42 U.S.C.A. § 300aa–15(f)(4)(A)—(B).

Regarding the method of payment, the Vaccine Act also provides that:

(4)(A) Except as provided in subparagraph (B), payment of compensation under the Program shall be determined on the basis of the net present value of the elements of the compensation and shall be paid from the trust fund in a lump sum of which all or a portion of the proceeds may be used as ordered by the special master to purchase an annuity or otherwise be used, with the consent of

the petitioner, in a manner determined by the special master to be in the best interests of the petitioner.

(B) In the case of a payment of compensation under the Program to a petitioner for a vaccine-related injury or death associated with the administration of a vaccine before the effective date of this subpart the compensation shall be determined on the basis of the net present value of the elements of compensation and paid in 4 equal annual installments of which all or a portion of the proceeds may be used as ordered by the special master to purchase an annuity or otherwise be used, with the consent of the petitioner, in a manner determined by the special master to be in the best interests of the petitioner. . . .

42 U.S.C.A. § 300aa–15(f)(4)(A) and (B).

■ It is clear from the Vaccine Act that the Congress intended for the Act to establish a flexible vaccine compensation program which would allow the special masters broad discretion to meet the particular needs of an individual worthy petitioner, through awards based on the particular facts of each case. *See* H.R.Rep. No. 247, 101st Cong., 1st Sess., at 510 (1989), *reprinted in* 1989 U.S.Code Cong. & Admin.News 1906, 2236. The drafters intended successful petitioners to be reimbursed for "actual unreimbursable expenses incurred from the date of judgment" and "reasonable projected unreimbursable expenses" in the variety of categories detailed in the Act. 42 U.S.C.A. § 300aa–15(a)(1)(A). Consequently, when a damage award, or a portion thereof, is challenged, the reviewing judge must look to the particular facts of the case at issue, as presented in the record which supports the legitimacy of the award. Then, the court must carefully examine the purpose for each portion of an award and the basis in the record which supports the legitimacy of the award.

In the instant case, at the hearing and in papers filed with the chief special master, the petitioner produced evidence of the injury and introduced a proposed Life Care Plan Notebook which detailed the petition-er's history/assessment/life expectancy, problem areas and future needs. The future needs section included projected costs for care of the petitioner for the remainder of her natural life. At the hearing, the petitioner introduced the testimony of an economist who testified on how to measure the growth rates to calculate the costs of care at present value, a life care planner, who was a licensed registered nurse, and the petitioner's father. The defendant provided the testimony of a life care planner, who works as a rehabilitation consultant at a case management and vocational counselling services firm.

After reviewing the evidence introduced by petitioner, including the life care plan, as challenged by defendant's life care expert, the chief special master reached his Decision as to the appropriate levels of compensation to be awarded to this petitioner. Although, as indicated above, a special master need not produce a detailed accounting to support the amounts included in his Decision, the special master must, nonetheless, show at least a reasonable nexus between the damages awarded and the evidence submitted for his consideration. In the instant case, the chief special master chose to award damages in annual amounts, by group categories, perhaps because he was uncertain as to the exact appropriate amount. This court finds that the annual amounts awarded, which are challenged by neither party to the litigation, are supportable in the record.

■ When the chief special master awarded the $100,000 lump sum to petitioner in his March 18, 1991 Decision, however, he specifically indicated the speculative nature of the lump sum award by stating that it was intended to "give a small level of flexibility to the compensation plan." He further stated that the lump sum was awarded to cover two categories: (1) "to deal with fluctuations in the yearly inflation rates" and (2) to cover "relatively minor changes in service needs not accounted for by the above levels of compensation." The chief special master, however, failed to describe to which of petitioner's service needs he was referring and whether or not

these needs were already included in or related to the annual monetary awards he had already included in his annual awards which he said were specifically to cover "therapies/attendant care, group home, therapeutic services, medication and related medical services." Additionally, he did not distinguish which portion of the $100,000 lump sum was to be awarded for the above categories and which portion was to be awarded to cover the fluctuations in yearly inflation rates.

Given the chief special master's choice to award petitioner specific yearly amounts and then to add a general catch-all additional lump sum award, it is difficult for this court to measure the appropriateness of the $100,000 lump sum award against the permissible grounds for compensation included in the Vaccine Act, or to support it by any reference to support for such an award in the record. Additionally, because the chief special master failed to break the $100,000 down between inflation and service needs, the court can only speculate as to the amounts assigned to each of these two radically, different categories. The speculative and vague nature of the lump sum award, which allows no basis for computation, makes the $100,000 lump sum payment an impermissible award of vaccine compensation program funds. Although, as indicated earlier, the chief special master does not have to give a detailed accounting to support the amount of a recovery, he has failed to show even a reasonable estimate, based on the evidence submitted to him by the parties, to support the need for the lump sum award.

In addition to the vague nature of the $100,000 lump sum award, that portion of the award to cover fluctuations in the inflation rate should be deleted because the inflation rate portion is not included as a separate compensable item in the vaccine statute and because the chief special master's award of an annual amount of com-

pensation already accounts for both inflation and services needs.[7] Moreover, from the testimony presented and the subsequent Decision issued by the chief special master, it would appear that the chief special master had already reviewed and taken the question of inflation into account in the amounts he awarded to cover the annual compensation awards. The award of the annuity itself includes provision for an inflation-adjusted stream of benefits. *See Loe,* 22 Cl.Ct. at 434. In *Loe,* Judge Tidwell affirmed the special master's decision awarding compensation in the form of an annuity and indicated that for the special master to order an annuity, it was obligatory to first predict a future inflation rate to insure that the payments would be sufficient to meet the future expenses. *Id.* at 447.

In the instant case, petitioner's expert, an economist with a Ph.D. from the Wharton School of Business at the University of Pennsylvania, testified at the hearing as to an appropriate inflation-adjusted growth rate. He is quoted in the record as offering considerable detail on how a six percent growth rate of the annuity would provide a realistic amount for future inflation. During the hearing before the chief special master, petitioner's expert stated:

"... Essentially what we are saying is that if the future is basically like the past, this is what these inflation rates basically will be.... [W]e've averaged whatever that 15 year average is ... a six percent long term inflation rate.... [I]n this situation ... you would have a growth rate of six percent ... I think six percent is realistic."

Record of Evidentiary Hearing at 26, 39, *Neher v. Secretary of the Department of Health and Human Services,* No. 90–431V (1991). After hearing all the evidence, the chief special master settled on a five percent growth rate.[8]

---

7. The rate of inflation is, of course, unpredictable at best. Changing inflation trends almost define the word speculative.

8. In the response to the Motion for Review, petitioner argues that the special master's finding "that the subject $100,000 would apply to

compensation 'not accounted for' by the award of an annuity, clearly reflects the intention of the chief special master to 'augment an inadequate annuity.'" This court is not persuaded. Surely, the special master did not make an award of $16,200 for the first year and $49,800

Reviewing the record in the instant case, this court, therefore, finds that a growth rate of five percent was consciously chosen by the chief special master, and included in the amounts he awarded to the petitioner on an annual basis. The $100,000 lump sum amount, therefore, merely represents a duplicative amount over-and-above what he included in his annual compensation award. Apparently, the chief special master was trying to hedge his award, perhaps because he felt unsure that his best estimate as to the annual sum to be granted petitioner was correct. This court concludes, however, that it was inappropriate for the chief special master to add on a generalized, additional, lump sum amount.

With respect to the service needs portion of the $100,000 lump sum award for Janine, this category was also compensated for by the chief special master in the categories on amounts he included in his Decision which made up the unreimbursable and reasonably projected annual expenses he awarded to petitioner. During the hearing, the chief special master heard the presentation of two detailed life care plans, one by the petitioner and one by the respondent, specifically relating to Janine's past and future needs. This testimony was, undoubtedly, carefully considered by the chief special master before he decided on the final amounts to be included in the yearly amounts to be awarded.

If the chief special master continued to have serious doubts as to the sufficiency of the compensation he was about to award, this could have been reflected by a more generous, annual allowance. Before issuing his Decision, the chief special master was free to adjust rates or compensation levels in order to meet the specific needs of an individual petitioner. In *Loe*, for example, the special master awarded a 5% cost escalator for the housing rental rate of inflation, rather than the 4% cost escalator often used. *Loe*, 22 Cl.Ct. at 447–48.

Chief Special Master Golkiewicz likewise had the authority and discretion to adjust the suggested compensation levels or growth rates presented to him by the witnesses to best serve this petitioner's needs. Presumably, the levels of compensation he included in his calculations of the annuity took into account all the appropriate factors.

All of Janine's service needs detailed in the Life Care Plans presented in the case have been reviewed and accounted for by the chief special master in the annuity he awarded, to be purchased to cover the annualized costs awarded. Therefore, allowing the $100,000 lump sum to add more money for "minor changes in service needs" is purely speculative, and provides a windfall, which is duplicative, and not in the category of a "reasonable projected expense."[9]

■ Although as a practical matter, this court recognizes that Janine's service needs might change over the years (even beyond "minor" changes) and that the inflation rate is subject to fluctuation, the Vaccine Act does not provide for a petitioner to receive a lump sum to cover any such possible changes or to reopen an award once an award amount is determined by a special master and accepted by the petitioner. The Vaccine Act provides a right to eligible petitioners to file for compensation under the Act on a one time basis.

A 1987 amendment to the Vaccine Act reinforced the notion that the compensation award was to be made for a sum certain, and not subject to adjustments. Prior to the amendment, subsection (f) of section 300aa–12 called for the revision of an award if it was found insufficient to meet the expenses, "... thus if medical costs rise more quickly than expected or injury becomes more serious, ... [petitioners] may ask for an increase or more frequent payment." National Vaccine Act of 1986,

---

for subsequent years, and at the very same time determine these amounts to be inadequate.

9. Nowhere in the chief special master's Decision, other than in his description of the lump sum award, is reference made to his concern regarding rising care costs, above what was provided by the annuity to cover annual costs, nor is there any evidence that the amount of the yearly costs awarded had been reduced by $100,000 in his Decision to allow for the lump sum.

Pub.L. No. 99–660, § 2112(f), 100 Stat. 3762 (1986). The amendment, Pub.L. No. 100–203, § 4303(d)(2)(A), 101 Stat. 1330–221 (1987), struck out section 2112(f).

The lump sum awarded by the chief special master in this case is not the type of precise award the legislature had in mind. Rather, it is a broad, vague, and all-encompassing category of compensation, not included in the Vaccine Act. The legislature had the means to allow revisions of awards, but chose to amend that avenue of recourse out of the Act. The legislature also could have authorized the inclusion of contingent sums in vaccine awards, but also chose not to do so. This court must honor those Congressional choices.

█ The remedy available to a petitioner under the Vaccine Act is quite unlike, for example, rights in divorce and custody proceedings in which a custodial parent can ask a court to reexamine a child's needs and redetermine a more appropriate award, based on present, changed circumstances. The Vaccine Act, however, does provide an additional remedy to petitioners who are dissatisfied with an award by the special master, a judge of this court, or the judges of the Court of Appeals for the Federal Circuit, within specified time periods, to refuse to accept a judgment under the Vaccine Act and to file a civil action for damages for vaccine related injury or death. 42 U.S.C.A. § 300aa–21.

## CONCLUSION

The award of the $100,000 lump sum by the chief special master in his Decision constituted a speculative award, not in accordance with the Vaccine Act. In part, it represents an award which is duplicative of costs already provided for in the annualized sums awarded to petitioner, for which the chief special master determined an annuity is to be purchased. Additionally, the lump sum represents an award which, according to case law governing the award of damages, is too speculative and unquantifiable. Moreover, it represents an award which is not authorized by the Vaccine Act. For the foregoing reasons, the award of the $100,000 lump sum included in the chief special master's Decision, dated March 18, 1991, is hereby REVERSED.

Although the court finds that the $100,000 lump sum award should be stricken from the monies awarded to the petitioner in the chief special master's Decision, the court agrees with the respondent that a remand of this case to the chief special master is not necessary. Neither party has contested that portion of the chief special master's award which allows compensation in the form of an annuity to be purchased to cover the annual costs for the following categories: therapies and attendant care, group home costs, therapeutic services and medication and related medical services for $16,200 in the "first year" and $49,800 for the "second year +". A second bite at the apple to relitigate the petitioner's appropriate award for future care should not be allowed. Therefore, in the interests of judicial economy and speedy resolution of petitioner's claims, and in the absence of the filing of a petition for review in the United States Court of Appeals for the Federal Circuit, a final judgment for the petitioner should be entered to fund the costs of purchasing an annuity to cover the petitioner's needs in the amount of $16,200 for the first year after the award, and $49,800 for the second year, and for the rest of petitioner's natural life.

IT IS SO ORDERED.