984 F.2d 1195
 129 A.L.R.Fed. 663
 Janine M. NEHER, a minor, by her parents and legal
representative, Douglas NEHER and Jean Royce
Neher, Petitioners,
v.
SECRETARY, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.
 No. 91-5138.
 United States Court of Appeals,
Federal Circuit.
 Jan. 28, 1993.
 
 Andrew W. Dodd of Andrew W. Dodd, A Professional Corporation, Torrance, CA, for petitioners.
 Nina S. Pelletier, Dept. of Justice, Washington, DC, for respondent.
 Before MICHEL, Circuit Judge, SKELTON, Senior Circuit Judge, and LOURIE, Circuit Judge.
 MICHEL, Circuit Judge.
 
 
 1
 Douglas and Jean Royce Neher (collectively the "Nehers" or "petitioners"), on behalf of their daughter, Janine M. Neher, appeal the decision of the United States Claims Court[1] reversing the special master's award of a $100,000 lump sum payment in addition to a lifetime annuity which covers all anticipated costs. Because the Claims Court correctly determined that the lump sum award by the special master is an impermissible award under the vaccine statute, we affirm.
 
 I. BACKGROUND
 
 2
 On May 21, 1990, the Nehers filed a petition in the United States Claims Court for compensation under The National Childhood Vaccine Injury Act of 1986 (codified, as amended, at 42 U.S.C.A. §§ 300aa-1--300aa-34 (West 1991)) (hereinafter "Vaccine Act") for injuries their daughter, Janine M. Neher, allegedly sustained as a result of a diphtheria-pertussis-tetanus vaccine she received on May 22, 1967. Pursuant to 42 U.S.C.A. § 300aa-11(a)(1), the Nehers' petition was forwarded to the office of special masters for resolution.
 
 
 3
 Because the government conceded that Janine is entitled to compensation under the Vaccine Act, the special master only determined the amount of compensation to which she is entitled. The special master conducted a hearing on February 22, 1991, and issued a final decision on March 18, 1991. The special master awarded Janine an annuity in the amount of $16,200 for the first year after the award and $49,800 for each year thereafter. The award was broken down as follows:
 
 
 4
 1st yr. 2nd yr. k
Therapies/attendant care $12,000 0
Group Home 0 $14,400
Therapeutic services 0 $31,200
Medications & related medical services $ 4,200 $ 4,200
 ------- ---------
Total $16,200 $49,800
 
 
 5
 In addition, the special master awarded Janine a lump sum in the amount of $100,000 to be paid in four equal annual installments of $25,000. The special master stated that the lump sum was awarded "to give a small level of flexibility to the compensation plan to deal with fluctuations in the yearly inflation rates and relatively minor changes in service needs not accounted for by the above levels of compensation." Neher v. Secretary Dep't of Health and Human Servs., No. 90-431V, slip op. at 2, 1991 WL 44451 (Cl.Ct. Mar. 18, 1991) (hereinafter Decision of Special Master ).
 
 
 6
 The government filed a motion pursuant to 42 U.S.C.A. § 300aa-12(e)(1) to have the Claims Court review that portion of the special master's decision awarding the $100,000 lump sum. The government alleged that the lump sum award was arbitrary, capricious, an abuse of discretion and not in accordance with the law. On review, the Claims Court held that the special master had erred in awarding the petitioner the lump sum payment in addition to the annuity. The Claims Court held that the lump sum award was improper and not authorized by the Vaccine Act because it was vague, speculative, and duplicative of compensation provided for in the annuity. Neher v. Secretary Dep't of Health and Human Servs., 23 Cl.Ct. 508, 517 (1991).
 
 
 7
 In the interest of judicial economy, the Claims Court did not remand the case to the special master to avoid giving petitioner "[a] second bite at the apple to relitigate the petitioner's appropriate award for future care." Id. Instead, the Claims Court ordered that "a final judgment for the petitioner should be entered to fund the costs of purchasing an annuity to cover the petitioner's needs in the amount of $16,200 for the first year after the award, and $49,800 for the second year, and for the rest of petitioner's natural life." Id.
 
 
 8
 Petitioner filed a motion for reconsideration of the Claims Court's order stating that it "fails to provide for an inflation factor and further, ... fails to define the standards for purchase by the respondent of annuities...." Neher v. Secretary Dep't of Health and Human Servs., No. 90-431V, slip op. at 2 (Cl.Ct. July 16, 1991) (order denying motion for reconsideration). In denying the motion, the Claims Court reiterated its holding that the Vaccine Act does not authorize an award of a separate amount for inflation and emphasized that because "the annuity portion of the chief special master's Decision dated March 18, 1991 was left undisturbed," the standards for respondent's purchase of the annuity remained the same. Id. at 2.
 
 
 9
 In the instant petition, the Nehers challenge the Claims Court's reversal of the lump sum award. In addition, despite the Claims Court's explanation in its denial of the Nehers' motion for reconsideration, the Nehers again challenge the Claims Court's failure to include a "growth factor, and financial criteria, in the Judgment." The Nehers
 
 
 10
 request that this Court clarify the Judgment herein so as to specify a 5% growth rate compounded annually via an annuity policy issued by a company gauged against appropriate standards, all as was originally ordered by the Chief Special Master herein.
 
 
 11
 Because the Claims Court's reconsideration decision makes clear that the special master's annuity award, including the attendant growth factor and standards for purchasing the annuity, was unaffected by the Claims Court's judgment, further clarification by this court is unnecessary. Consequently, our analysis is limited to the propriety of the lump sum award.
 
 II. STANDARD OF REVIEW
 The Vaccine Act states:
 
 12
 [A]ny petitioner aggrieved by the findings or conclusions of the court may obtain review of the judgment of the court in the United States court of appeals for the Federal Circuit....
 
 
 13
 42 U.S.C.A. § 300aa-12(f). Although the statute does not expressly state the standard this court should apply in reviewing the Claims Court, the statutory scheme as a whole does suggest how this court should perform its function. In the case of Hines v. Secretary of the Dep't of Health and Human Servs., this court analyzed the statutory scheme and considered analogous situations to conclude:
 
 
 14
 [I]n a case arising under the 1989 amendments to the Vaccine Act, we review de novo the Claims Court's determination as to whether or not the special master's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.
 
 
 15
 940 F.2d 1518, 1524 (Fed.Cir.1991). In Munn v. Secretary of the Dep't of Health and Human Servs., 970 F.2d 863 (Fed.Cir.1992), the court elaborated how that standard of review operates, stating:
 
 
 16
 These standards vary in application as well as degree of deference. Each standard applies to a different aspect of the judgment. Fact findings are reviewed by us, as by the Claims Court judge, under the arbitrary and capricious standard; legal questions under the "not in accordance with law" standard; and discretionary rulings under the abuse of discretion standard.
 
 
 17
 Id. at 870 n. 10.
 
 
 18
 In the instant case we must determine whether the Vaccine Act authorizes the lump sum awarded by the special master. Because that is a legal question, we must apply the "not in accordance with law" standard in this appeal. While the Claims Court applied that same standard to conclude that the special master "erred" in awarding the lump sum, 23 Cl.Ct. at 510, we must review the statute and the special master's award de novo to determine whether the Claims Court reached the proper conclusion.
 
 III. THE STATUTORY COMPENSATION PROVISIONS
 
 19
 Section 300aa-15 of the Vaccine Act sets forth specific expenses for which compensation can be awarded to petitioner, including: expenses which "result from the vaccine-related injury for which the petitioner seeks compensation," 42 U.S.C.A. § 300aa-15(a)(1)(A)(i), expenses "incurred by or on behalf of the person who suffered such injury," id. at § 300aa-5(a)(1)(A)(ii), expenses "for diagnosis and medical or other remedial care determined to be reasonably necessary," id. at § 300aa-15(a)(1)(A)(iii)(I), and expenses "for rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy, residential and custodial care and service expenses, special equipment, related travel expenses, and facilities determined to be reasonably necessary," id. at § 300aa-15(a)(1)(A)(iii)(II). See also id. at § 300aa-15(a)(1)(B) (Subsection (a)(1)(B) covers the same types of expenses as subsection (a)(1)(A), except that the former covers expenses incurred before the date of the judgment while the later covers expenses incurred after the date of the judgment.).
 
 
 20
 In the event of a vaccine-related death, the Vaccine Act authorizes payment of $250,000 to the estate of the deceased. 42 U.S.C.A. § 300aa-15(a)(2). In the case of a vaccine-related injury incurred after attaining the age of 18, the Vaccine Act additionally provides compensation for lost earnings. Id. at § 300aa-15(a)(3)(A). Finally, the Vaccine Act authorizes compensation for pain and suffering, id. at § 300aa-15(a)(4), and for attorney fees and other costs "incurred in any proceeding on [a] petition," id. at § 300aa-15(e). The Vaccine Act does not authorize any other compensation. Indeed, the Vaccine Act specifically prohibits compensation for "punitive or exemplary damages," id. at § 300aa-15(d)(1), and for anything "other than the health, education, or welfare of the person who suffered the vaccine-related injury with respect to which the compensation is paid," id. at § 300aa-15(d)(2), except as specifically provided.
 
 IV. ANALYSIS
 
 21
 The government has not challenged the special master's award of the annuity to compensate the Nehers for expenses pertaining to therapy, attendant care, group housing, and medications and other medical services, presumably because these expenses clearly fall within the express provisions of the statute. Instead, what the government challenged in the Claims Court was the special master's award of the $100,000 lump sum "to give a small level of flexibility to the compensation plan to deal with fluctuations in the yearly inflation rates and relatively minor changes in service needs not accounted for by the above levels of compensation." Decision of Special Master at 2. Analyzing both bases for the lump sum payment, we determine that the Vaccine Act does not authorize payment under either.
 
 
 22
 1. Fluctuations in Inflation Rates. The Vaccine Act specifically provides that "compensation under the Program shall be determined on the basis of the net present value of the elements of the compensation." 42 U.S.C.A. § 300aa-15(f)(4)(A). See also id. at § 300aa-15(f)(4)(B) (also requiring compensation based on net present value for vaccines administered during a different time frame than those covered by subsection (f)(4)(A)). In the instant case, petitioners' economics expert provided testimony "on how to measure the growth rates to calculate the costs of care at present value." 23 Cl.Ct. at 514. Petitioners' expert concluded that a 6% growth factor would be sufficient to meet petitioners' future expenses. Id. at 515. After balancing this testimony against the government's evidence concerning inflation, the special master found that a 5% growth factor was appropriate. Decision of Special Master at 3.
 
 
 23
 As with any attempt to adjust for inflation, anticipated fluctuations in the inflation rate must, as a practical matter, be considered in determining an appropriate constant growth factor. Therefore, the special master's annuity award, with the attendant growth factor, already accounts for inflation and any predicted fluctuations therein. Therefore, the special master's award of an additional lump sum "to deal with fluctuations in the yearly inflation rates" is duplicative and unauthorized, and cannot stand. See also Loe v. Secretary Dep't of Health and Human Servs., 22 Cl.Ct. 430, 434 (1991) (stating that "the purchase price of an annuity is a valid measure of the present value of damages").
 
 
 24
 2. Changes in Service Needs. The Vaccine Act authorizes an annuity award only for expenses that can be "reasonabl[y] projected." 42 U.S.C.A. § 300aa-15(a)(1)(A). In the instant case, the special master conducted a hearing to determine what petitioners' reasonably projected future expenses would be. Based on the testimony and evidence presented at the hearing, the special master awarded an annuity in the amount of $16,200 for the first year after the award and $49,800 for subsequent years. In making the award, the special master specifically listed the expected expenses for which the annuity was provided. As the Claims Court appropriately and rhetorically noted, "[s]urely, the special master did not make an award of $16,200 for the first year and $49,800 for subsequent years, and at the very same time determine these amounts to be inadequate." 23 Cl.Ct. at 515-16 n. 8. Therefore, we conclude that the annuity accounts for all reasonably projected expenses.
 
 
 25
 As the annuity accounts for all reasonably projected expenses, the additional lump sum "to deal with minor changes in service needs not accounted for by the annuities" can only refer to possible expenses that cannot be reasonably projected. As such, the lump sum award is, on its face, inconsistent with the statutory requirement that compensable expenses be reasonably projected. 42 U.S.C.A. § 300aa-15(a)(1)(A).
 
 
 26
 Petitioners argue that the Vaccine Act's legislative history evidences congressional intent that the vaccine program grant awards "quickly, easily, and with certainty and generosity." H.R.Rep. No. 908, 99th Cong., 2d Sess. 3 (1986), reprinted in 1986 U.S.C.C.A.N. 6287, 6344 (emphasis added). A broad pronouncement of general congressional intent, however, cannot override an express requirement of the statute. Because the lump sum was awarded for expenses that do not satisfy the statutory requirement that they be reasonably projected, the lump sum award is not in accordance with the statute and cannot stand.
 
 
 27
 Moreover, the Vaccine Act, as originally enacted, included a provision for increasing the amount of an award if the award later proved insufficient to meet actual, necessary expenses. National Childhood Vaccine Injury Act of 1986, Pub.L. No. 99-660, § 2112(f), 100 Stat. 3755, 3762 (1986). In 1987, the Act was amended, however, to delete that provision. Vaccine Compensation Amendments of 1987, Pub.L. No. 100-203, § 4303(d)(2)(A), 101 Stat. 1330-222 (1987). Such amendment suggests congressional intent to limit vaccine petitioners' entitlement to compensation to costs that can be reasonably anticipated at the time of the award. Once the special master had determined what compensation was due, there was no authority for adding "flexibility" to the plan. The special master's award is not subject to subsequent, or concurrent, enhancement.
 
 V. CONCLUSION
 
 28
 The Claims Court correctly determined that neither of the special master's bases for the lump sum award is authorized by the Vaccine Act. Because fluctuations in inflation rates are already accounted for in the annuity growth factor, an additional award to compensate for the fluctuation in inflation rates is duplicative. Further, the Vaccine Act does not allow compensation for changes in service needs that cannot be reasonably projected at the time of the award. Accordingly, the Claims Court's reversal of the special master's lump sum award is
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 As of October 29, 1992, the "United States Court of Federal Claims." Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub.L. No. 102-572, § 902, 106 Stat. 4516 (1992)