Erick **LOWRY**, a minor, by and through his legal representative, Jean **LOWRY**, Petitioner–Appellant,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES**, Respondent–Appellee.

No. 98–5181.

United States Court of Appeals, Federal Circuit.

Sept. 3, 1999.

Peter H. Meyers, Attorney, George Washington University Law School, Jacob Burns Community Legal Clinics, Washington, DC, argued, for petitioner-appellant.

Mark W. Rogers, Attorney, Torts Branch, Civil Division, Department of Justice, Washington, DC, argued, for respondent-appellee. With him on the brief were David W. Ogden, Acting Assistant Attorney General, Helene M. Goldberg, Director, John Lodge Euler, Deputy Director, and Eleanor A. Barry, Trial Attorney.

Before MICHEL, GAJARSA, Circuit Judges, and CUDAHY,* Senior Circuit Judge.

## DECISION

GAJARSA, Circuit Judge.

Petitioner Jean Lowry, as the legal representative of her minor son, Erick Lowry, appeals the order of the United States Court of Federal Claims Docket No. 94–451V, in which the court affirmed the Special Master's dismissal of the petitioner's claim under the National Childhood Vaccine Injury Act of 1986, as amended, 42 U.S.C. § 300aa–1 to 34 (the "Act"). The issue before us is straightforward: whether the provision in the recently enacted Vaccine Injury Compensation Program Modification Act (the "Modification Act") which eliminates the requirement that petitioners show that they "incurred unreimbursable expenses" related to the vaccine injury in excess of $1,000 applies to cases pending when the Modification Act became

law. For the reasons stated herein, we hold that this provision of the Modification Act applies to all cases pending when the Modification Act went into effect. We therefore reverse the dismissal of the petitioner's complaint by the Court of Federal Claims and remand the case for further proceedings.

## BACKGROUND

On July 12, 1994, petitioner Jean Lowry filed a claim for compensation under the Act, alleging that her son, a California resident, received a Measles–Mumps–Rubella vaccination on July 2, 1991. She further alleged that he thereafter began to suffer from seizures and developmental delays. The petition asserted that he had not suffered from seizures prior to the vaccination. Ms. Lowry further asserted that the Lowrys had incurred over $1,000 in unreimbursable expenses in connection with the vaccine-related medical problems. This assertion was included in the complaint to satisfy the Act's unreimbursable expenditure requirement, which provides that a petitioner must have "incurred unreimbursable expenses due in whole or in part to such [vaccine-related injury] in an amount greater than $1,000" in order to receive an award under the Act. 42 U.S.C. § 300aa–11(c)(1)(D)(i).

Ms. Lowry asserted that she was able to meet the $1,000 threshold by calculating the difference between the amount originally billed by various health care providers for medical service provided to Erick and the amount actually paid by Medi–Cal, the California Medicaid program. Under California law, health care providers are prohibited from seeking payment for any unpaid balances from Medi–Cal participants such as Ms. Lowry. Thus, the petitioner's alleged unreimbursed expenses consisted of the portion of Erick's medical bills that Medi–Cal did not pay and that Ms. Lowry would not have to pay.

* Honorable Richard D. Cudahy, *Senior Circuit Judge,* United States Court of Appeals for the Seventh Circuit, sitting by designation.

The Special Master dismissed the petition for compensation on the sole ground that the petitioner had not satisfied the $1,000 requirement. This decision was based on a statutory interpretation of what constituted "incurred unreimbursable expenses" in the Act. Specifically, the Special Master determined that Ms. Lowry's reliance on expenses that neither she nor anyone else would be expected to pay did not constitute such "unreimbursable" expenses. Ms. Lowry then appealed to the Court of Federal Claims, which affirmed the dismissal as correct as a matter of law.

After the Court of Federal Claims rendered its decision, the Modification Act became law, thereby eliminating the requirement that persons seeking vaccine compensation incur $1,000 in unreimbursable expenses. In their briefs to this court, both parties argue that the unreimbursable expenditure provision of the Modification Act applies to cases pending at the time of its enactment. The parties also argue that this court should reach this issue even though it was not before the Special Master and the Court of Federal Claims because of concerns of judicial and litigant efficiency.

## DISCUSSION

■ The controlling question this appeal presents is whether the provision eliminating the threshold requirement for unreimbursable expenses in the Modification Act applies to cases pending when the statute was enacted. Because this is a legal question, we apply the *de novo* standard of review in deciding this issue. *See Neher v. Secretary, Dept. of Health and Human Servs.*, 984 F.2d 1195, 1198 (Fed. Cir.1993); *Munn v. Secretary of Health and Human Servs.*, 970 F.2d 863, 870 (Fed.Cir.1992).

The Supreme Court has explained that, in determining whether "a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229

(1994). In determining whether the Modification Act applies to this pending appeal, we must therefore begin with the text of the statute itself. The relevant portion of the Modification Act is as follows:

Section 2111(c)(1)(D)(i) of the Public Health Service Act (42 U.S.C. § 300aa–11(c)(1)(D)(i)) is amended by striking "and incurred unreimbursable expenses due in whole or in part to such illness, disability, injury, or condition in an amount greater than $1,000."

Vaccine Injury Compensation Program Modification Act, Pub.L. No. 105–277, § 1502, 112 Stat. 2681, 2681–741. The text of the statute does not, as is evident, manifest an intent that the Modification Act should be applied to cases that were pending before its enactment. A review of the legislative history of this provision is similarly silent on this issue.

■ In the absence of a directive in the Modification Act, we must evaluate the Modification Act "in light of ordinary judicial principles concerning the application of new rules to pending cases and preenactment conduct." *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483. The Supreme Court has recognized that there is a "traditional presumption [in our jurisprudence] against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment." *Id.* at 278, 114 S.Ct. 1483. This presumption is based on "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Id.* at 269, 114 S.Ct. 1483. The presumption against statutory retroactivity has special force in the area of legislative interference with property and contract rights. *See id.* at 272, 114 S.Ct. 1483.

■ A statute, however, does not operate retroactively merely when applied in a case arising from conduct antedating its enactment or when it upsets expectations based on prior law. *See id.* at 269, 114 S.Ct. 1483. A court must ask "whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 270, 114 S.Ct. 1483. The conclusion that a statute operates ret-

roactively "comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.* A statute has retroactive effect if it would impair the rights a party possessed when it acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. *See id.* at 280, 114 S.Ct. 1483.

■ When examining the provision eliminating the threshold requirement for unreimbursable expenses in the Modification Act in light of the context and purpose of the Act itself, it is evident that applying this provision to pending cases would not result in an improper retroactive application of the statute. The Act's National Vaccine Program was established to develop new vaccines, improve existing vaccines, and compensate individuals who have been injured by vaccines routinely administered to children. *See* H.R. Rep. 99–908, at 1, *reprinted in* 1986 U.S.C.C.A.N. 6344, 6344. Congress instituted this compensatory program because the traditional civil tort actions against vaccine manufacturers were producing undesirable results both with respect to the victims and the vaccine industry. *See id.,* at 6–7, *reprinted in* U.S.C.C.A.N. at 6347–48. Congress found that the traditional tort system was not working for victims because it resulted in lengthy delays, high transaction costs, and sometimes no recovery. *See id.* Similarly, the high cost of litigation and difficulty of obtaining insurance was undermining incentives for vaccine manufacturers to remain in the vaccine market. In sum, Congress was concerned with the instability and unpredictability in the childhood vaccine market. *See id.*

To deal with these problems, Congress established a federal "no-fault" compensation program under which awards were to be made to vaccine-injured persons "quickly" and with "generosity." *See id.,* at 1, *reprinted in* 1986 U.S.C.C.A.N. at 6344. All individuals injured by a vaccine administered after the date of enactment of the Act are required to go through the Act's no-fault compensation program. *See id.* Under this program, the statutory respondent is the Secretary of the Department of Health and Human Services (the "Secretary") rather than the manufacturer. The petitioner in these suits is awarded compensation based on a showing of certain criteria without regard to negligence on the part of the manufacturer. Any award to the victims is made from a Trust Fund that is created by excise taxes on vaccines. If vaccine-injured persons elect to reject judgments under the program, they can pursue traditional tort remedies against the vaccine manufacturer. *See id.*

In this truly unique context, it is evident that applying the relevant provision of the Modification Act to pending cases would not result in an improper retroactive application of the statute. We begin by noting that enforcing the elimination of the $1,000 requirement with respect to pending cases does not affect settled property or contract rights; the amendment only relates to tort actions. The elimination of the $1,000 requirement does not attach new legal consequences to the preenactment conduct of any private litigants to these vaccine injury actions or impose new duties on such individuals. The vaccine manufacturers were potentially liable for their conduct regardless of the level of the victim's expenses. Clearly, the manufacturers could anticipate liability for such causes of action when they engaged in the conduct in question. Moreover, vaccine manufacturers presumably would prefer to have the amendment apply to pending cases to avoid litigation in court. In addition, the statutory respondent to actions under the Act, the Secretary, is not penalized by a lack of fair notice in applying this portion of the Modification Act to pending cases. Rather, the Secretary argues for application of this provision to pending cases because it furthers Congress' purpose of providing an economic alternative to traditional tort suits by encouraging participation in the program and keeping potential plaintiffs in the system.

We conclude that applying the provision eliminating the $1,000 requirement to pending cases would not have an improper retroactive effect because the rights and obligations of the relevant parties would not be changed unfairly and no party can claim unfair surprise. In sum, there does not appear to be a party with reliance interests that would be unjustly affected by application of this provision of the Modification Act to pending cases.

## CONCLUSION

We conclude that the elimination of the unreimbursable expense provision should apply to all cases that were pending when the Modification Act took effect. We therefore reverse the Court of Federal Claims' affirmance of the Special Master's dismissal of Ms. Lowry's petition for compensation, and remand the case for further proceedings consistent with this opinion.

*REVERSED* AND *REMANDED.*

## COSTS

Each party to bear its own costs.